IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF OHIO

| | |
|---|---|
| Richard A. Baumgart<br>Chapter 7 Trustee for the Bankruptcy<br>Estate of Yazmin Torres-Duqum<br>55 Public Square, 21st Floor<br>Cleveland, Ohio 44113<br><br>     Plaintiff,<br><br>vs.<br><br>University Hospitals Cleveland<br>Medical Center<br>3605 Warrensville Center Road<br>Shaker Heights, OH 44122<br><br>     Defendant. | CASE NO.<br><br>JUDGE<br><br>**COMPLAINT**<br><br>(Jury Demand Endorsed Hereon) |

## INTRODUCTION

1. Yazmin Torres-Duqum, a physical therapist employed by Defendant, requested a transfer to a vacant position at another UH facility as an accommodation of her disability. Her treating provider certified that the accommodation was necessary; Torres was experiencing panic attacks and debilitating anxiety after suffering a miscarriage and her healthcare provider believed a different work environment would help ameliorate her symptoms and allow her to perform the duties of a physical therapist. Defendant refused to transfer her and terminated her employment. Torres eventually found another position at another facility owned by Defendant and attended orientation, but after Defendant learned that she filed a charge of discrimination with the EEOC, Defendant never scheduled her to work.

1

2. Plaintiff Richard A. Baumgart, Chapter 7 Trustee for the Bankruptcy Estate of Yazmin Torres-Duqum (Yazmin Torres-Duqum shall be hereafter referred to simply as "Torres"), brings this action for disability discrimination and retaliation against Defendant University Hospitals Cleveland Medical Center (hereafter, "UH"), and alleges as follows:

## PARTIES

3. Torres is a resident of the State of Ohio.

4. At all times relevant to this lawsuit, Torres was an "employee" within the meaning of Ohio Revised Code Chapter 4112.

5. Defendant UH is an Ohio corporation with its principal place of business in Cuyahoga County, Ohio.

6. At all times relevant to this lawsuit, UH was an "employer" and a "person" within the meaning of Ohio Revised Code Chapter 4112, acting by and through its agents, servants and employees.

7. On or about May 30, 2018, having been unemployed for a significant time because Defendant refused to accommodate her disability, Torres filed for bankruptcy protection under Chapter 7 of the United States Bankruptcy Code.

8. The Torres bankruptcy was filed in the United States Bankruptcy Court for the Northern District of Ohio in the Cleveland Division. It was styled In re Yazmin I. Torres and assigned case number 18-13258.

9. Richard A. Baumgart was appointed as the trustee of the Torres Bankruptcy Estate on or about May 30, 2018.

## JURISDICTION AND VENUE

10. Torres has fulfilled all conditions precedent to the institution of this action: she filed a timely charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC") on December 5, 2016, which charge was assigned EEOC Case No. 532-2017-00302. On March 15, 2017, she filed a second timely charge of discrimination and retaliation with the EEOC, which charge was assigned EEOC Case No. 532-2017-00754. Both charges were investigated. On or about August 5, 2019, the EEOC issued a determination finding probable cause that Defendant discriminated against Torres in violation of the ADA. On February 10, 2020 the EEOC mailed Torres a Notice of Right to Sue.

11. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 because one or more of the claims involved arise under the laws of the United States.

12. The Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367(a).

13. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the events giving rise to this lawsuit occurred in this District.

## GENERAL ALLEGATIONS

### Torres is a licensed physical therapist.

14. Torres is a licensed physical therapist and is qualified to work as such.

15. In May, 2011, Torres began employment with UH as a licensed physical therapist in the department of Rehabilitation and Sports Medicine.

16. Until taking a medical leave of absence and requesting an accommodation of her disability in February 2016, Torres worked at the UH location located in the Jewish Community Center ("JCC") in Pepper Pike, Ohio.

### Torres is disabled.

17. Torres is a qualified individual with a disability.

18. Torres suffers from post-traumatic stress disorder and depression, both of which are mental impairments that substantially limit one or more of her major life activities, including the activities of working, interacting with others, concentrating, thinking, caring for herself and her children, sleeping, eating and performing routine daily tasks. Torres' impairments are usually controlled with medication and other treatment. When her impairments are controlled, Torres is able to perform the essential functions of a licensed physical therapist with or without reasonable accommodations.

19. Occasionally, in times of increased stress, Torres experiences an exacerbation of the symptoms of her impairments. During those times, she experiences debilitating anxiety, depression, and what is typically referred to as a "panic attack." When Torres experiences a panic attack, she is incapacitated from working for a period lasting between thirty minutes and several hours.

### Torres requested a reasonable accommodation but UH refused to accommodate her.

20. During the first week of February 2016, Torres experienced a miscarriage, requiring outpatient treatment. She requested intermittent leave under the Family and Medical Care Act ("FMLA"). She experienced ongoing

complications and requested, and was granted, a period of continuous FMLA leave.

21. Torres informed her UH supervisor of the reason for her leave.

22. During Torres' leave, coworkers told her that other coworkers were openly gossiping about Torres, her medical condition, her overall physical and mental health, and the reason for her leave. They shared with her that other coworkers were gossiping about her with the patients Torres treated. Because all of the individuals Torres told about her medical condition denied sharing it with anyone, Torres reasonably believed that her supervisor had disclosed her confidential medical information in violation of her rights.

23. Torres texted her supervisor objecting to his disclosure of her confidential medical information.

24. The stress of the miscarriage, leave, disclosure of her confidential medical information and the disturbing rumors spread by her coworkers combined to exacerbate Torres' disabling mental impairments, necessitating that Torres request an extension of her medical leave. Her request was granted.

25. As Torres prepared to return to work, she experienced frequent panic attacks and severe, debilitating anxiety.

26. Torres worked with her healthcare provider to determine what reasonable accommodation(s) would likely reduce the intensity, duration and/or frequency of her panic attacks and reduce the intensity of her anxiety so that she could return to work as a physical therapist at UH.

27. Torres' healthcare provider recommended that Torres be assigned to an open physical therapy position at a different UH location to allow her to return to work.

28. On or about February 16, 2016, Torres made a request to her UH supervisor that she be permitted to transfer to a then-open position for which she was qualified at a different UH facility. The supervisor referred Torres to an individual in the UH Human Resources department. Torres followed the instructions she was given to review UH job postings and apply for an open position. She applied on February 25, 2016. She explained to her supervisor that she was requesting the transfer due to her "physical and mental wellbeing and health."

29. UH denied Torres' request and did not engage in an interactive process. Instead, UH instructed Torres to return to her previous position or remain on unpaid leave.

30. Over the following months, Torres applied for multiple open positions for which she was qualified, but UH refused to place her in any of them.

31. On or about May 12, 2016, Torres' healthcare provider submitted a written certification to UH requesting that Torres be allowed to return to work in a different work environment because of her impairment.

32. On or about June 29, 2016, UH wrote to Torres acknowledging that her healthcare provider certified that she required "a change of work environment" but stated that there was no accommodation that UH could

provide. The letter instructed Torres to return to her previous position, without accommodation, on July 1, 2017.

33. On July 15, 2016, UH instructed Torres that she would be terminated from her employment effective July 29, 2016 for "job abandonment."

34. On July 21, 2016, Torres repeated her request for an accommodation in an email to UH Human Resources personnel. The email reiterated that Torres' medical documentation, previously provided, substantiated her need for a transfer as an accommodation of her disability. The email noted that UH had neither granted the request, nor engaged in an interactive process to allow Torres to return to work. The email expressed Torres' reasonable belief that UH violated her rights under the ADA.

35. On or about July 26, 2016, UH sent a letter to Torres stating that her "ADA request to be transferred to another position was denied. . ." The letter informed Torres that if she did not return to her prior position at the JCC by August 1, 2016, she would be terminated.

36. On July 28, 2016, Torres' healthcare provider sent yet another certification to UH. The certification clearly stated that Torres was able to return to work on August 1, 2016, but not to the JCC location.

37. On August 11, 2016, UH notified Torres, in writing, that because she was unable to return to work at the JCC location, she would remain on medical leave. That same day, Torre's supervisor notified her in writing that she was being replaced in her position.

38. On or about September 17, 2016, Torres's counsel wrote to UH objecting to its failure to accommodate Torres and asserting Torres' claims of disability discrimination and failure to accommodate Torres' disability.

39. Torres continued to apply for open positions for which she was qualified at UH, but UH denied her request to transfer to every one of them.

40. UH has never engaged in an interactive process with Torres.

> **Torres was eventually selected for an open position at UH St. John, but UH refused to allow her to work in the position after learning that she filed a charge of discrimination.**

41. Torres continued to apply for open positions for which she was qualified, and on or about December 5, 2016, University Hospitals St. John Medical Center offered Torres a position as a physical therapist. She was not selected to work a particular shift, but rather for what is commonly referred to as "PRN shift," which means that she would be called to fill in for other physical therapists, as needed.

42. At the time she was granted the PRN position, UH St. John told Torres that the PRN shift typically works between 24 and 26 hours weekly.

43. Torres was instructed to attend orientation for the PRN position on January 10 and 11, 2017. She attended the orientation.

44. On or about December 5, 2016, Torres filed Charge No. 532-2017-00754 with the EEOC.

45. Sometime after December 5, 2016, UH learned that Torres had filed a charge of discrimination against it.

46. On or about January 17, 2017, after Torres inquired of her supervisor at UH St. John if she would be placed on the schedule, her supervisor responded that she expected to need Torres for coverage January 30-February 3, 2017.

47. On January 25, 2017, the supervisor emailed Torres and told her she was not needed.

48. On February 6, 2017, Torres again inquired if she would be placed on the schedule, and the supervisor responded, "We are fully staffed at this time. Starting to pick up from the January slump. I'll keep you posted!"

49. Despite not placing Torres on the schedule to actually work, on February 18, 2018 UH wrote to the EEOC that Torres' charge should be dismissed in part because she had been granted the PRN position at University Hospitals St. John Medical Center.

50. UH posted an opening for a PRN Physical Therapist at St. John Medical Center on February 3, 2017.

51. UH never placed Torres on the schedule to work PRN at UH St. John.

### FIRST CLAIM FOR RELIEF – DISABILITY DISCRIMINATION
### Ohio Revised Code Chapter 4112

52. Plaintiff hereby incorporates all allegations in the paragraphs above as if fully rewritten herein.

53. Torres is a member of a protected class because she is a qualified individual with a disability.

54. Torres was qualified for the position of physical therapist and could have performed the essential functions of her job with reasonable accommodation.

55. Torres requested a reasonable accommodation, which was denied by UH.
56. UH failed to engage with Torres in an interactive process to determine what other reasonable accommodations could have allowed her to perform the essential functions of her job.
57. UH took adverse action against Torres by refusing to place her in any of the open positions for which she applied, refusing to place her on the schedule at St. John, and terminating her employment, all because of her disability.
58. As a direct and proximate consequence of UH's unlawful and discriminatory misconduct, described above, Torres suffered emotional distress and humiliation, lost salary, wages and benefits, incurred attorneys' fees and costs of litigation, and has been otherwise injured, all of which has damaged Plaintiff. Some or all of Plaintiff's damages will continue to accrue indefinitely into the future.
59. Defendant discriminated against Torres in violation of R.C. §4112.02 and is liable to Plaintiff for all of its damages and losses pursuant to R.C. §4112.99.
60. UH's conduct, described herein, was done: maliciously and/or with conscious disregard of Torres' and the Plaintiff's rights and with a great probability of causing harm, and/or was done maliciously and/or by aggravated or egregious fraud by Defendant's agents or servants, who, as principals or masters, knowingly authorized, participated in, or ratified those actions and/or omissions, for which Defendant is liable to Plaintiff for punitive damages.

## SECOND CLAIM FOR RELIEF – DISABILITY DISCRIMINATION
### Americans with Disabilities Act

61. Plaintiff hereby incorporates all allegations set forth above as if fully rewritten herein.

62. By refusing to accommodate Torres' disability, refusing to place her in any of the open positions for which she applied, failing to engage in the interactive process with her, refusing to place her on the schedule at St. John, and terminating her employment, UH violated the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101, *et seq*.

63. As a direct and proximate consequence of Defendant's unlawful and discriminatory misconduct, described above, Torres suffered emotional distress and humiliation, lost salary, wages and benefits, incurred attorneys' fees and costs of litigation, and has been otherwise injured, all of which has damaged Plaintiff. Some or all of Plaintiff's damages will continue to accrue indefinitely into the future.

64. Defendant discriminated against Torres in violation of the Americans with Disabilities Act, as amended, and is liable to Plaintiff for all of its damages and losses.

65. UH's conduct, described herein, was done: maliciously and/or with conscious disregard of Torres' and the Plaintiff's rights and with a great probability of causing harm, and/or was done maliciously and/or by aggravated or egregious fraud by Defendant's agents or servants, who, as principals or masters,

knowingly authorized, participated in, or ratified those actions and/or omissions, for which Defendant is liable to Plaintiff for punitive damages.

### THIRD FIFTH CLAIM FOR RELIEF – RETALIATION
### Ohio Revised Code Chapter 4112

66. Plaintiff hereby incorporates all allegations set forth above as if fully rewritten herein.

67. Torres engaged in protected activity by repeatedly requesting a reasonable accommodation, opposing Defendant's failure to accommodate her, filing her first and second charges of discrimination and participating in the EEOC's investigation, and opposing UH's disability discrimination and failure to accommodate through her counsel.

68. Defendant was aware of Plaintiff's protected activity.

69. Defendants took adverse action against Torres by refusing to place her in any of the open positions for which she was qualified, failing to assign her to work at UH St. John Medical Center, and terminating her employment, because of her protected activities.

70. As a direct and proximate consequence of Defendant's unlawful and retaliatory misconduct, described above, Torres suffered emotional distress and humiliation, lost salary, wages and benefits, incurred attorneys' fees and costs of litigation, and has been otherwise injured, all of which has damaged Plaintiff. Some or all of Plaintiff's damages will continue to accrue indefinitely into the future.

71. In retaliating against Torres, Defendant violated R.C. §4112.02, for which Defendant is liable to Plaintiff for all of its damages and losses pursuant to R.C. §4112.99.

72. UH's conduct, described herein, was done: maliciously and/or with conscious disregard of Torres' and the Plaintiff's rights and with a great probability of causing harm, and/or was done maliciously and/or by aggravated or egregious fraud by Defendant's agents or servants, who, as principals or masters, knowingly authorized, participated in, or ratified those actions and/or omissions, for which Defendant is liable to Plaintiff for punitive damages.

### **FOURTH CLAIM FOR RELIEF – RETALIATION**
### **Americans with Disabilities Act**

73. Plaintiff hereby incorporates all allegations set forth above as if fully rewritten herein.

74. Torres engaged in protected activity by repeatedly requesting a reasonable accommodation, opposing Defendant's failure to accommodate her, filing her first and second charges of discrimination and participating in the EEOC's investigation, and opposing UH's disability discrimination and failure to accommodate through her counsel.

75. Defendants took adverse action against Torres by refusing to place her in any of the open positions for which she was qualified, failing to assign her to work at UH St. John Medical Center, and terminating her employment, because of her protected activities.

76. As a direct and proximate consequence of Defendant's unlawful and retaliatory misconduct, described above, Torres suffered emotional distress and humiliation, lost salary, wages and benefits, incurred attorneys' fees and costs of litigation, and has been otherwise injured, all of which has damaged Plaintiff. Some or all of Plaintiff's damages will continue to accrue indefinitely into the future.

77. UH retaliated against Torres in violation of the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101, *et seq*., and is liable to Plaintiff for all of its damages and losses.

78. UH's conduct, described herein, was done: maliciously and/or with conscious disregard of Torres' and the Plaintiff's rights and with a great probability of causing harm, and/or was done maliciously and/or by aggravated or egregious fraud by Defendant's agents or servants, who, as principals or masters, knowingly authorized, participated in, or ratified those actions and/or omissions, for which Defendant is liable to Plaintiff for punitive damages.

**WHEREFORE,** Plaintiff prays for judgment against Defendant for: back pay; front pay; reinstatement and other equitable relief; compensatory damages in amounts that will fully and fairly compensate Plaintiff for its injury, damage, and loss; an award of punitive damages in such an amount as will sufficiently punish and deter the wrongful conduct of the Defendants; for attorneys' fees and costs of suit; and, for such other relief as the Court deems just, all in an amount in excess of twenty-five thousand dollars.

## JURY DEMAND

A trial by jury is hereby demanded in the within matter in the maximum number of jurors allowed by law.

> Respectfully submitted,
>
> */s/ Cathleen Bolek*
> Cathleen M. Bolek (0059884)
> **Bolek Besser Glesius LLC**
> Monarch Centre, Suite 302
> 5885 Landerbrook Drive
> Cleveland, Ohio 44124
> T 216.464.3004
> F 866.542.0743
> cbolek@bolekbesser.com
> Counsel for Plaintiff