## IN THE UNITED STATES DISTRICT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

SHELDON STEIN CHAPTER :
7 TRUSTEE FOR THE BANKRUPTCY :
ESTATE OF YAZMIN TORRES-DUQUM :
                               :     CASE NO. 1:20-cv-00998-DAP
       Plaintiff           :
                               :     JUDGE DAN AARON POLSTER
   v.                      :
                               :
UNIVERSITY HOSPITALS :
CLEVELAND MEDICAL CENTER :
                               :
     Defendant.         :

### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON
### ALL CLAIMS ASSERTED BY PLAINTIFF IN HER COMPLAINT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendant University Hospitals Cleveland Medical Center ("UHCMC" or "Defendant"), respectfully moves for summary judgment on all claims asserted by Plaintiff Richard A. Baumgart ("Plaintiff"), Chapter 7 Trustee for the Bankruptcy Estate of Yazmin Torres-Duqum ("Torres"). Plaintiff's original Complaint asserted four claims of action. Counts One and Three were dismissed and, therefore, only Counts Two and Four remain in this matter. Count Two asserts a claim for failure to accommodate in violation of the Americans with Disabilities Act (the "ADA"). Count Four asserts a claim for retaliation in violation of the ADA.

Plaintiff's claim for disability discrimination arises from Torres' request for an accommodation to transfer to another position due to workplace gossip surrounding a leave of absence. Importantly, such a transfer is unreasonable and does not support a finding that Torres is disabled. *Fricke v. E.I. Dupont Co.,* 219 Fed. Appx. 384, 389 (6th Cir. 2007) ("[p]ersonality conflicts, workplace stress, and being unable to work with a particular person or persons does not rise to the level of a disability or inability to work for purposes of the ADA.").

1

As to Plaintiff's retaliation claim, it is undisputed that the individuals responsible for the relevant employment decisions were either unaware of Torres' protected activity or that Torres was treated more favorably than her coworkers. Accordingly, Torres cannot show that any alleged protected activity is the "but for" cause of any adverse action. *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533, 186 L. Ed. 2d 503 (2013).

Accordingly, this Court should grant UHCMC's motion for summary judgment in its entirety and terminate this matter. This motion is supported by the attached memorandum in support; the deposition transcripts of Torres, Christine Middleton, Valerie Jaggie, and Lisa Edgehouse; and the declarations of Christine Middleton and Pamela Lanter.

Respectfully submitted,

/s/ David A. Campbell_____
David A. Campbell (0066494)
Donald G. Slezak (0092422)
Lewis Brisbois Bisgaard & Smith, LLP
1375 E. 9th Street
Suite 2250
Cleveland, OH 44114
Phone: (216) 298-1262
Fax: (216) 344-9421
david.a.campbell@lewisbrisbois.com
donald.slezak@lewisbrisbois.com

*Attorneys for Defendant*

# TABLE OF CONTENTS

**Page No.**

I. STATEMENT OF ADHERENCE TO L.R. 71 ........................................................ 1

II. BRIEF STATEMENT OF THE ISSUES ............................................................ 1

III. SUMMARY OF THE ARGUMENT ................................................................. 1

IV. RELEVANT AND UNDISPUTED FACTS ......................................................... 3

    A. Torres Was A Long Time Employee Within UHCMC'S Affiliate Network .............. 3

    B. Torres Suffered A Miscarriage In February 2016 An Is Granted An Approved
       Medical Leave Of Absence .......................................................................... 3

    C. Torres Informs Coworkers Of The Miscarriage And Requests A Transfer
       Due To Alleged Coworker Discussions Concerning Her Leave Of Absence .............. 4

    D. Torres Submits An Accommodation Request Due To The Alleged Coworker
       Speculation Concerning Her Miscarriage ..................................................... 5

    E. UHCMC Evaluated Torres' Request And Determined That It Was Unreasonable ...... 6

    F. UHCMC Provides Torres With A Reasonable Accommodation Of An Extended
       Leave Of Absence When She Refuses To Return To Work ................................. 7

    G. Torres Applied To Positions Through University Hospitals' Standard Transfer
       Procedure ............................................................................................... 8

    H. No One Involved With Torres' Applications Was Aware Of Torres' Alleged
       Disability Or Accommodation Request ......................................................... 9

    I. Torres Ultimately Obtained Employment At SJMC As A PRN In December 2016
       Without Medical Restrictions ..................................................................... 10

    J. Torres' Alleged Protected Activity ............................................................. 11

V. LAW AND ARGUMENT ............................................................................ 12

    A. Standard Of Review ................................................................................. 12

    B. Torres' Claim For Disability Discrimination Fails As A Matter Of Law ............... 12

       1. Torres is not disabled ........................................................................ 13

       2. Torres' request for accommodation was unreasonable ............................. 14

i

   *a.  Torres' request to be automatically transferred was unreasonable*............... 14

   *b.  UHCMC engaged in the interactive process and provided an alternative accommodation – a leave of absence to apply for alternative positions*........ 16

 C.  Torres' Claim For Retaliation Fails As A Matter Of law ............................................ 17

  1.  Torres' accommodation request was denied prior to her July 2016 complaint ..... 18

  2.  No one involved in Torres' application process was aware of Torres' accommodation request............................................................................................ 18

  3.  There is no evidence that anyone involved in the hiring and scheduling at SJMC was aware of Torres' protected activity ...................................................... 19

VI.  CONCLUSION ........................................................................................................... 20

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)..................................................................................................12

*Ask Chems., LP v. Comput Packages, Inc.*,
    593 Fed. Appx. 506 (6th Cir. 2014)........................................................................12

*Burdett-Foster v. Blue Cross Shield of Mich.*,
    574 Fed. Appx. 672 (6th Cir. 2014)..........................................................13, 14, 15

*Burns v. Coca-Cola Enters.*,
    222 F.3d 247 (6th Cir. 2000) ...............................................................................2, 15

*Cardenas-Meade v. Pfizer, Inc.*,
    No. 3:09-CV-268, 2011 U.S. Dist. LEXIS 139782 (E.D. Tenn. Dec. 5, 2011)......................13

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)..................................................................................................12

*Fishbauch v. City of Toledo*,
    798 F.Supp.2d 888 (N.D. Ohio 2011)......................................................................12

*Fricke v. E.I. Dupont Co.*,
    219 Fed. Appx. 384 (6th Cir. 2007)..............................................................1, 1, 13

*Garcia v. Whirlpool Corp.*,
    No. 3:08-cv-02944, 2010 U.S. Dist. LEXIS 118409 (N.D. Ohio Nov. 5, 2010)....................15

*Gatlin v. East Tenn. Children's Hosp.*,
    76 F.Supp. 2d 839 (E.D. Tenn. 1998).......................................................................14

*Gaul v. AT&T, Inc.*,
    955 F.Supp. 346 (D. NJ 1997)..........................................................................2, 13, 14, 15

*Gearhart v. E.I. DuPont de Nemours & Co.*,
    No. 20-3222, 2020 U.S. App. LEXIS 35175 (6th Cir. Nov. 4, 2020).....................14

*Hall v. United States Postal Service*,
    857 F.2d (6th Cir. 1988).............................................................................................14

*Hankins v. The Gap, Inc.*,
    84 F.3d 797 (6th Cir. 1996).......................................................................................17

*Hudson v. First Solar, Inc.*,
 No. 3:12cv2292, 2014 U.S. Dist. LEXIS 200373 (N.D. Ohio Mar 28, 2014) ........................ 17

*Jakubowksi v. Christ Hosp., Inc.*,
 627 F.3d 195 (6th Cir. 2010) ................................................................................. 16

*Lindsey v. Whirlpool Corp.*,
 295 Fed. Appx. 758 (6th Cir. 2008) .......................................................................... 12

*McDonald v. UAW-GM Ctr. For Human Res.*,
 738 Fed. Appx. 848 (6th Cir. 2018) ...................................................................... 16, 17

*Mickey v. Zeidler Tool and Die Co.*,
 516 F.3d 516 (6th Cir. 2008) ............................................................................... 17, 19

*MISC Berhad v. Advanced Polymer Coatings, Inc.*,
 101 F.Supp. 3d 731 (N.D. Ohio 2015) ....................................................................... 12

*Neely v. Benchmark Family Servs.*,
 640 Fed. Appx. 429 (6th Cir. 2016) .......................................................................... 13

*Reeves v. Sanderson Plumbing Prods., Inc.*,
 530 U.S. 133 (2000) .......................................................................................... 12

*Richfield v. Fish Food Banks*,
 No. C14-5516, 2015 U.S. Dist. LEXIS 7430 (W.D. Wash. Jan. 22, 2015) ............................ 16

*Sesson v. UPS*,
 No. 3:19-cv-01165, 2022 U.S. Dist. LEXIS 100463 (M.D. Tenn. June 6,
 2022) ........................................................................................................ 18

*Siemon v. AT&T Corp.*,
 113 F.3d 1175 (10th Cir. 1997) .............................................................................. 13

*Talley v. Fam. Dollar Stores of Ohio, Inc.*,
 542 F.3d 1099 (6th Cir. 2008) ............................................................................... 17

*Univ. of Tex. Sw. Med. Ctr. v. Nassar*,
 133 S. Ct. 2517, 186 L. Ed. 2d 503 (2013) ...................................................... 2, 2, 17, 18, 19

*Vinson v. Grant/Riverside Methodist Hosps.*,
 No. C2-00-1358, 2001 U.S. Dist. LEXIS 26372 (S.D. Ohio Aug. 30, 2001) ...................... 2, 15

*Wasek v. Arrow Energy Servs.*,
 682 F.3d 463 (6th Cir. 2012) ................................................................................ 18

**Statutes**

ADA .................................................................................................... 1, 1, 2, 11, 13, 15, 16

Americans with Disabilities Act .................................................................................1, 1

FMLA .........................................................................................................................4, 5

**Other Authorities**

Fed.R.Civ.P. 56(a) ........................................................................................................12

Federal Rules of Civil Procedure Rule 56 .....................................................................1

L.R. 71 ...........................................................................................................................1

Local Rule 7.1 ................................................................................................................1

**MEMORANDUM IN SUPPORT**

## I.     STATEMENT OF ADHERENCE TO L.R. 71.

This Memorandum in Support adheres to the page limitations set forth in Local Rule 7.1 of the United States District Court for the Northern District of Ohio.  The present action has been assigned to the standard case management track.

## II.    BRIEF STATEMENT OF THE ISSUES.

**A.**     Whether Yazmin Torres' ("Torres") request to be automatically transferred into a different position due to admitted issues with coworkers was a reasonable request to accommodate an alleged disability.

**B.**     Whether Torres' protected activity was casually connected to Defendant University Hospitals Cleveland Medical Center's ("UHCMC") employment decisions so as to support a claim for retaliation under the ADA.

## III.   SUMMARY OF THE ARGUMENT.

This matter arises out of Torres'[1] former employment with UHCMC.  Specifically, at issue in this matter is whether Torres was disabled and whether her request to transfer out of her position at University Hospitals Rehabilitation Sports Medicine at Mandel Jewish Community Center ("JCC") due to gossip surrounding her leave of absence is a reasonable accommodation under the Americans with Disabilities Act (the "ADA").

It is well-established that "[p]ersonality conflicts, workplace stress, and being unable to work with a particular person or persons does not rise to the level of a disability or inability to work for purposes of the ADA." *Fricke v. E.I. Dupont Co.,* 219 Fed. Appx. 384, 389 (6th Cir.

---

[1] Torres filed for bankruptcy subsequent to the allegations in her Complaint and, therefore, the plaintiff in this matter is Sheldon Stein, Chapter 7 Trustee for the Bankruptcy Estate of Yazmin Torres-Duqum ("Plaintiff"). (Deposition of Yazmin Torres (hereinafter "Torres Dep. at __" at 37).

1

2007).  Here, Torres admits that she had no medical restrictions prior to her leave of absence, was ready, willing and able to work at any location immediately outside of the JCC location, and could perform the essential functions of her position at all times during her leave of absence. Accordingly, Torres was not disabled. *See Gaul v. AT&T, Inc.*, 955 F.Supp. 346, 353 (D. NJ 1997) (a mere request to transfer away from a supervisor to accommodate alleged disability does not qualify as a disability under the ADA).

As to Torres' request for accommodation, UHCMC requires all employees seeking to transfer to apply for open positions for which the employee is qualified.  Employers do not violate the ADA by requiring employees to follow transfer procedures. *Vinson v. Grant/Riverside Methodist Hosps.*, No. C2-00-1358, 2001 U.S. Dist. LEXIS 26372, * 34 (S.D. Ohio Aug. 30, 2001).  In fact, employers are not automatically required to grant accommodation requests seeking to transfer positions, as doing so would "convert a nondiscrimination statute into a mandatory preference statute, a result which would be inconsistent with the nondiscriminatory aims of the ADA." *See Burns v. Coca-Cola Enters.*, 222 F.3d 247, 257 (6th Cir. 2000).

Finally, Torres brings forth a claim for retaliation under the ADA.  The retaliation claim alleges that Torres was denied an accommodation, denied positions for which she applied, and denied scheduling opportunities at UH St. John Medical Center ("SJMC") due to engaging in alleged protected activity.  However, it is undisputed that the decision to deny Torres' accommodation was made before any protected activity, that all individuals involved in the hiring process were unaware of Torres' protected activity, and that Torres was scheduled more hours than other coworkers SJMC.  Thus, Torres cannot show that her protected activity was the "but for" cause of any adverse action. *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533, 186 L. Ed. 2d 503 (2013).

2

Accordingly, Torres' disability discrimination and retaliation claims fail as a matter of law and this Court should grant UHCMC's Motion for Summary Judgment and terminate this matter.

IV.     **RELEVANT AND UNDISPUTED FACTS**

A.     **Torres Was A Long Time Employee Within UHCMC'S Affiliate Network**.

Torres was a long-time employee within UHCMC's affiliate network. (Deposition of Yazmin Torres (hereinafter "Dep. Torres at __") at 23-24).[2]  Torres' Complaint takes issue with her employment at JCC and SJMC. (*See generally*, Complaint).

Torres began her employment as a Senior Physical Therapist at JCC in December 2014. (Dep. Torres at 23-24 and Ex.5).  Torres admits that she did not have any issues during her employment with JCC or any of her coworkers prior to February 10, 2016. (Dep. Torres 56). Torres also admits that she did not submit any workplace medical restrictions prior to the allegations giving rise to Plaintiff's Complaint. (Dep. Torres at 56).  In fact, Torres worked as a physical therapist at JCC the day immediately before entering an extended leave of absence from which she never returned. (Dep. Torres at 56).

B.     **Torres Suffered A Miscarriage In February 2016 And Is Granted An Approved Medical Leave Of Absence**.

On February 10, 2022 Torres suffered a miscarriage. (Dep. Torres at 56-57).  Torres informed UHCMC that same day that she would be absent for the week. (Dep. Torres at 59,60, and 66). Torres did not inform UHCMC the reason for her absence. (Dep. Torres at 59-60).  In fact, Torres kept her pregnancy and miscarriage confidential from UHCMC. (Dep. Torres at 66-67, 69 and Ex.3).   However, Torres admits to telling two JCC coworkers and another former co-worker who transferred out of JCC, Amanda Gideon, about the miscarriage in the days following the miscarriage. (Dep. Torres at 64-67, 69 and Ex. 3).

---

[2] A copy of Torres' deposition has been filed with the Court. (*See* Docket as ECF # 43).

Following the miscarriage, Torres went on approved FMLA leave and never returned to her position at JCC. (Dep. Torres at 24, 30,56-57, 84, and 112).

### C.     Torres Informs Coworkers Of The Miscarriage And Requests A Transfer Due To Alleged Coworker Discussions Concerning Her Leave Of Absence.

On February 11, 2016 Torres' coworkers met outside of work hours for an event. (Dep. Torres at 67-68 and Ex. 3).  The event included several employees, including Amanda Gideon. (Dep. Torres at 68-69).  Ms. Gideon texted Torres concerning coworker speculation about Torres' absence during the event. (Dep. Torres at 64-69 and Ex. 3).  Specifically, Ms. Gideon alleged that Torres' coworkers were speculating that Torres had called off work due to a gymnastics meet the upcoming weekend. ((Dep. Torres at 64-68 and Ex. 3).

Torres spoke with her supervisor, Nate Tekovik, shortly after the work event. (Dep. Torres at 58-60).  Torres informed Mr. Tekovik of the miscarriage. (Dep. Torres at 60).  Torres also requested to transfer out of the JCC due to the gossip surrounding her absence:

> **Q**: Okay. And what did those – I guess, first of all, what do you recall from the phone calls?
> **A**: …After I got off that phone call, I received a message, or the next day, if I was okay, from Nate, and then I found out what was being said about me and what was being disclosed, and that's when I told Nate that I needed a transfer for my physical, mental, and emotional wellbeing…"

(Dep. Torres at 59-60).

> **Q**: Okay. And then it says, from you, "I just texted Nat[e] and ripped him a new one and that I'm filing a grievance with UH and I need to be transferred ASAP.  So done with this shit." What did Nate do?
> **A**:  I told Nate that I had applied for a different location because of the current situation, and I needed to remove myself from this, as dealing with this was spiraling my anxiety and PTSD out of control…
> **Q**:  Okay. Well, we'll - -
> **A**:  And I told him the whole situation, and that people who did not know about my pregnancy were talking about it, and all my medical history, my previous losses, everything was being exposed.

4

> **Q**:  But this one seemed like Nate did something wrong. "I ripped
> him a new one." And let me restate it.  Your text says, "I ripped
> him a new one," referring to Nate.  What had Nate done wrong to this
> point?
> **A**:  Perpetuated the rumors of what was being done.
> **Q**: And what was being - - I see a lot of texts here, and I don't see -
> -
> **A**:  What I was hearing was that there was gossip about my medical
> history, my mental state, that I was just not showing up for work for
> gymnastics. So by saying "I ripped him a new one" is just my anger,
> my grief right now. I literally told him that I needed a transfer, and
> that he was not stopping anything from the rumors and stuff from
> happening.

(Dep. Torres at 70-71).

### D.      Torres Submits An Accommodation Request Due To The Alleged Coworker Speculation Concerning Her Miscarriage.

Torres submitted a request for accommodation on May 16, 2016. (Dep. Edgehouse at 75, 84 and Ex. 16).  UHCMC thereafter immediately engaged in the interactive process by first providing Torres with a reasonable accommodation by extending her leave of absence beyond the expiration of her FMLA on May 16, 2016. (Dep. Torres at 67-68, 98; *see also* Dep. Edgehouse at 14).

As to the request, the form alleged that Torres' disability was "anxiety" that "limits her focus." (Deposition of Lisa Edgehouse (hereinafter "Edgehouse Dep. at __) at Ex. 16).[3]  As to a proposed accommodation, Torres' medical provider indicated it was permanent and stated Torres must work: "[i]n an environment of respect and acceptance Yazmin's anxiety should decrease." (Dep. Edgehouse at Ex. 16).

Torres sent a revised request on June 2, 2016. (Dep. Edgehouse at Ex. 17).  The request modified Torres' disability to be "anxiety; panic attacks," and requested the following permanent accommodation: "[c]hange of location of work environment and flexibility." (Dep. Edgehouse at

---

[3] A copy of Lisa Edgehouse's deposition has been filed with the Court. (*See* ECF # 39).

Ex. 17).  As to the accommodation request, Torres testified that she was able to work in any location other than the JCC. (Dep. Torres at 85).  Specifically, Plaintiff testified that she could perform all the job duties of a physical therapist but could only do so at a location other than the JCC. (Dep. Plaintiff at 86). In fact, Torres admitted that she was ready and able to work as early as February 16, 2016 and was applying for positions within the UHCMC network at that time. (Dep. Torres at 95 and 97).

On June 16, 2022, Torres' medical provider submitted a return to work authorization that cleared Torres to return to work without restriction on July 1, 2016. (Dep. Torres at Ex. 4).

**E.** **UHCMC Evaluated Torres' Request And Determined That It Was Unreasonable.**

UHCMC evaluated both accommodation forms submitted by Torres' medical provider to determine whether there was sufficient information to make a determination and whether the determination could be made.  (Deposition of Valerie Jaggie (hereinafter "Dep. Jaggie at __") at 65-72 and Exs. 4, 5, and 6).[4]  UHCMC communicated with Torres' medical provider to determine whether Torres could perform the essential functions of her position. (Dep. Torres at Ex. 5). UHCMC sent the essential functions for Torres' position to Torres' medical provider on May 18, 2016, requesting that Torres' medical provider evaluate the essential functions and determine whether Torres could perform those essential functions. (Dep. Torres at Ex. 5).  UHCMC also communicated with Torres, reviewed and analyzed the medical documentation and restrictions provided by Torres' medical provider, and consulted with individuals in management, human resources, and the legal department. (Dep. Jaggie at 65-72 and Exs. 4, 5, and 6; *see also* Dep. Edgehouse at Exs. 16 and 17).

---

[4] A copy of Valerie Jaggie's deposition has been filed with this Court. (*See* ECF # 39).

As to the accommodation request, UHCMC does not have a process for automatically transferring employees to new positions, regardless of alleged disability status or medical restrictions. (Deposition Christine Middleton (hereinafter "Dep. Middleton at __")[5] at 24-26 *see also*; *see also* Declaration of Christine Middleton (hereinafter "Decl. Middleton at __") at ¶ 12).[6] Rather, all employees, regardless of alleged disability status, apply for positions through the University Hospitals standard application and transfer process. (Dep. Middleton at 24-26; *see also* Decl. Middleton at ¶ 5).  Employees are not simply granted transfers automatically – there must be an open position and the employee must be qualified for the position. (Dep. Middleton at 24-26 and 82-83; *see also* Decl. Middleton at ¶¶ 2-5). Indeed, permitting employees to simply transfer into positions automatically would negatively impact patient care. (Dep. Middleton at 103).  Torres admits that she must go through this process and that UHCMC did not have an obligation to simply transfer her to any open position. (Dep. Torres at 99 and 101-102).

Ultimately, UHCMC denied Torres' request for accommodation. (Dep. Edgehouse at Ex. 26).  UHCMC denied the request because there was no specific accommodation identified by Torres' medical provider and no indication that Torres could not perform the essential functions of her position at her current job assignment. (Dep. Edgehouse at Ex. 26).  Torres was notified of the denial via a phone call with HR Manager Valerie Jaggie and subsequently by letter dated June 29, 2016. (Dep. Edgehouse at Ex. 26).

**F.**   **UHCMC Provides Torres With A Reasonable Accommodation Of An Extended Leave Of Absence When She Refuses To Return To Work.**

Because Torres' accommodation request was denied, she was expected and required to report to work by July 1, 2016. (Dep. Torres at Ex. 6).  Torres, however, refused to return to work.

---

[5] A copy of Christine Middleton's deposition has been filed with this Court. (*See* docket at ECF # 41).
[6] A copy of Christine Middleton's deposition is attached hereto as Exhibit 1.

(Dep. Torres at 90-91 and Ex. 6).  UHCMC sent a letter to Torres on July 15, 2016 requesting that Torres either report to work or provide UHCMC with additional medical certification justifying her absence by July 25, 2016. (Dep. Torres at Ex. 6).  The July 25, 2016 letter also informed Torres that her failure to comply with the requirements by July 29, 2016 would result in her termination due to job abandonment. (Dep. Torres at Ex. 6).  Torres did not report to work or provide medical documentation supporting an additional leave of absence. (Dep. Torres at 90-91 and Ex. 7).

UHCMC sent a second letter to Torres on July 25, 2016 again requesting that Torres report to work or provide medical certification pertaining to an additional absence. (Dep. Torres at Ex. 7).  The July 25, 2016 letter informed Torres that her failure to comply with the letter by August 1, 2016 would result in Torres' position being posted and filled. (Dep. Torres at Ex. 7).  Finally, the July 26, 2016 letter informed Torres that if she did not return to work at JCC, that she could apply for open positions within the UHCMC affiliate network. (Dep. Torres at Ex. 7).

On July 28, 2016, Torres provided a revised return to work authorization that restricted her to returning to work at the JCC location. (Dep. Edgehouse at Ex. 32).  The request to return to work at a location other than the JCC was the same request previously submitted by Torres and denied by UHCMC. (Dep. Edgehouse at Exs. 26 and 32).  Accordingly, UHCMC provided Torres with an alternative accommodation – an extended leave of absence to enable Torres to apply for open positions for which she was qualified. (Dep. Edgehouse at 33; *see also* Dep Torres at 98-101; Dep. Jaggie at 67-68).  Torres failed to return to work at the JCC and, instead, went on the leave of absence. (Dep. Torres at 90-91 and 98-101).

### G.     Torres Applied To Positions Through University Hospitals' Standard Transfer Procedure.

Torres applied to 21 positions in 2016. (Dep. Torres at 94 and Ex. 8). As to the application process, internal applicants are assigned to work with recruiters employed by UHCMC. (Dep.

Middleton at 89-91).  The recruiter's involvement in the process is merely a gatekeeper that determines whether the applicant meets the minimum requirements for the position and, if so, coordinates the interview process between the applicant and the hiring team responsible for making the ultimate hiring decision. (Dep. Middleton at 33-34, 58, and 89-92).  Importantly, hiring managers are not required to simply fill an open position with a qualified candidate, they may hold the position open while they search for an ideal candidate. (Dep. Middleton at 34).

**H.**    **No One Involved With Torres' Applications Was Aware Of Torres' Alleged Disability Or Accommodation Request.**

Torres was very difficult, rude, and inappropriate during the application process. (Dep. Middleton at 17-18, 21-22, 37, 41, 65, 66, 78, and 92-96).  For example, Torres frequently failed to respond to emails and calls concerning pending applications and interview requests, often failing to return communications to UHCMC for weeks on end. (Dep. Middleton at 21-22, 65).  As another example, Torres often berated the recruiter assigned to assist her during the application process and, at times, threatened to take legal action against the recruiter. (Dep. Middleton at 65-66) ("And then when I called to let her know they were moving forward with another applicant, she let me know how she was going to sue me and I wouldn't be employed again and UH would have to let me go").  Torres' inappropriate conduct forced UHCMC's recruiter to have a witness present during every call with Torres. (Dep. Middleton at 17-18, 21-22, and 41).

Despite Torres' highly inappropriate conduct, Torres was still recommended for interviews by hiring managers. (Dep. Middleton at 38).  In fact, UHCMC provided Torres with extra attention by providing her with preparation sessions in an effort to improve her interview skills – a service that was not standard for UHCMC to provide applicants. (Dep. Middleton at 21-22 and 38). Ultimately, Torres recalls interviewing for eight to twelve positions. (Dep. Torres at 96).

As to the positions for which Torres applied, Torres admits that she withdrew her application from some of the positions because she determined that she did not qualify for the position. (Dep. Torres at 97-98).  Some of the positions were canceled and never filled. (Dep. Torres at Ex. 8).  For other positions, there is no dispute that Torres was not the best candidate for the position.  (Dep. Torres at 96-97; *see also* Dep. Middleton at 87-88).   Torres was determined to not be the best candidate for the positions for a variety of factors, including poor interviews, being late for interviews, and not a good fit with the particular patient population.  (Dep. Middleton at 26, 43, 59, and 87-88; Decl. Middelton at ¶ 9).

Importantly, Torres admits that her alleged disability and accommodation request were not discussed during any of her interviews. (Dep. Torres at 96-97. Torres' alleged disability and accommodation request were not known to the recruiters involved in Torres' application process. (Dep. Middleton at 66,118, and 132-133; *see also* Decl. Middleton at ¶ 10).

**I.      Torres Ultimately Obtained Employment At SJMC As A PRN In December 2016 Without Medical Restrictions.**

Torres interviewed for a PRN position at SJMC in late 2016. (Dep. Torres at 104 and 114-116; *see also* Declaration of Pamela Lanter (hereinafter "Decl. Lanter at __") at ¶ 3).[7]  Torres was ultimately offered the PRN position on December 5, 2016. (Dep. Torres at 104 and 115-116; *see also* Decl. Lanter at ¶ 4).  Torres admits that she did not have any medical restrictions at this time and was able to work. (Dep. Torres at 87-88, 94, 119, and 125).

PRNs are only scheduled to work if there is a need to fill a scheduling gap. (Decl. Lanter at ¶ 5).  PRNs set their own schedules, provide their own hours, and have the ultimate discretion to accept or reject a shift. (*Id.*).  Torres set her own schedule for SJMC. (Dep. Torres at 27-28; *see*

---

[7] A copy of Pamela Lanter's Declaration is attached hereto as Exhibit 2.

*also* Decl. Lanter at ¶ 6).  Torres provided very limited hours of availability to SJMC and turned down several PRN shifts. (Decl. Lanter. at ¶ 8).

The demand for the physical therapist PRN position decreased in 2017. (Decl. Lanter at ¶ 9).  Only one other physical therapist PRN was assigned to outpatient orthopedic rehabilitation at St. Johns in 2017. (*Id.* at ¶ 10).  Although the other PRN provided more availability to SJMC, that PRN was only scheduled to work three hours in 2017, while Torres worked 14.48 hours in 2017. (*Id.* at 11 and 12). Torres admits that she is unaware of any PRNs at St. Johns who received more hours that her. (Dep. Torres at 107-08).  In fact, Torres testified that she was unaware of any other physical therapist PRNs at St. John's in 2017. (*Id.*).

### J.  **Torres' Alleged Protected Activity.**

Aside from her request for accommodation, Torres submitted a single complaint of alleged disability discrimination on July 21, 2016. (Dep. Torres at Ex. 10; *see also* Dep. Edgehouse at Ex. 30).  The complaint alleged that UHCMC violated the ADA by denying Torres' accommodation request. (Dep. Edgehouse at Ex. 30).  The complaint was submitted after UHCMC had made the decision to deny her accommodation request. (Dep. Torres at Exs. 4 and 6; *see also* Dep. Edgehouse at Ex. 26).

Torres filed two charges of discrimination with the Equal Employment Opportunity Commission: one on December 5, 2016 (the "2016 Charge") and one on March 15, 2017 (the "2017 Charge). (Dep. Torres at Exs. 10 and 11). Torres admits that she did not inform SJMC about the 2016 Charge or 2017 Charge and is unaware as to whether anyone at SJMC had knowledge of the charges. (*Id.* at 116-117).

Finally, Torres concedes that she was hired as a physical therapy PRN with a UHCMC affiliate following her charges. (Dep. Torres at 25 and 109).  Torres worked at this location until November 2017 and does not raise issues with this employment. (*Id.* at 109-110 and 118).

## V.     LAW AND ARGUMENT

### A.     Standard Of Review.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a). UHCMC has the burden of proving that there are no genuine issues of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).   This Court evaluates the evidence in the light most favorable to Plaintiff.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000).  However, the mere scintilla of evidence supporting Plaintiff is not sufficient; there must be evidence on which a jury could reasonably find for Plaintiff in order to deny UHCMC's motion.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). UHCMC has satisfied its initial burden by "identifying those parts of the record which demonstrate the absence of any genuine issue of material fact."  *Lindsey v. Whirlpool Corp.*, 295 Fed. Appx. 758, 764 (6th Cir. 2008).  The burden now shifts to Plaintiff who has the burden to "point to evidence that demonstrates that there is a genuine dispute of material fact for trial."  *Ask Chems., LP v. Comput Packages, Inc.*, 593 Fed. Appx. 506, 508 (6th Cir. 2014).  "[T]he nonmoving party may not simply rely on its pleading, but must 'produce evidence that results in a conflict of material fact to be solved by a jury.'"  *MISC Berhad v. Advanced Polymer Coatings, Inc.*, 101 F.Supp. 3d 731, 736 (N.D. Ohio 2015).

### B.     Torres' Claim For Disability Discrimination Fails As A Matter Of Law.

In order for Plaintiff to prove its claim for failure to accommodate, Plaintiff must prove that (1) Torres is disabled; and (2) UHCMC failed to provide the necessary accommodation. *See Fishbauch v. City of Toledo*, 798 F.Supp.2d 888, 895 (N.D. Ohio 2011)(citing *Myers v. Cuyahoga County*, 182 Fed.Appx. 510, 515 (6th Cir. May 31, 2006)).  Plaintiff cannot meet this burden

### 1.     Torres is not disabled.

A person is disabled pursuant to the ADA if they suffer from a physical or mental impairment that substantially limits one or more of their major life activities. *See Neely v. Benchmark Family Servs.*, 640 Fed. Appx. 429, 432-33 (6th Cir. 2016).

Torres admits that she is unwilling to return to the JCC because of a personal conflict with her coworkers. Importantly, "[p]ersonality conflicts, workplace stress, and being unable to work with a particular person or persons does not rise to the level of a disability or inability to work for purposes of the ADA." *Fricke v. E.I. Dupont Co.,* 219 Fed. Appx. 384, 389 (6th Cir. 2007); *see also Burdett-Foster v. Blue Cross Shield of Mich.*, 574 Fed. Appx. 672, 680 (6th Cir. 2014). "The major life activity of working is not substantially limited if plaintiff merely cannot work under a certain supervisor because of anxiety and stress…" *Cardenas-Meade v. Pfizer, Inc.*, No. 3:09-CV-268, 2011 U.S. Dist. LEXIS 139782, *15-16 (E.D. Tenn. Dec. 5, 2011).  The inability to work with coworkers or supervisors is not a disability because it does not prevent the plaintiff "from performing a class of jobs or a broad range of jobs." *Siemon v. AT&T Corp.*, 113 F.3d 1175 (10th Cir. 1997). Torres admits that she can work and perform the essential functions of her position, and has done so, without restriction at any location aside from the JCC. (Dep. Torres at 86).

This holds true even where the alleged disability results in a request to transfer. *See, e.g., Gaul v. AT&T, Inc.*, 955 F.Supp. 346, 353 (D. NJ 1997) (a request to transfer away from a supervisor to accommodate a disability does not qualify as a disability).  In fact, "if [plaintiff] is disabled due to his depression and stress disorders, then there mere transfer would be unlikely to accommodate his handicap." *Gaul v. AT&T, Inc.*, 955 F.Supp. 346, 353 (D. NJ 1997).    Thus, Torres cannot prove that she is disabled and her claim fails as a matter of law.

### 2.     Torres' request for accommodation was unreasonable.

#### a.     *Torres' request to be automatically transferred was unreasonable.*

"[T]he employee bears the initial burden of proposing an accommodation and showing that the accommodation is objectively reasonable." *Gatlin v. East Tenn. Children's Hosp.*, 76 F.Supp. 2d 839, 841 (E.D. Tenn. 1998).    "The plaintiff bears the initial burden of showing that an accommodation seems reasonable on its face, *i.e.*, ordinarily or in the run of cases." *Gearhart v. E.I. DuPont de Nemours & Co.*, No. 20-3222, 2020 U.S. App. LEXIS 35175, *15 (6th Cir. Nov. 4, 2020).    If a plaintiff can make this showing, then the burden shifts to the employer to demonstrate undue hardship. *Id.*

Torres requested to be automatically transferred to a position outside of the JCC due to conflict with her supervisor and coworkers. As an initial matter, Torres' request necessarily requests UHCMC to eliminate an essential function of her position – reporting to work at her assigned location.    UHCMC is not required to eliminate an essential function of a position in order to accommodate a request. *See Hall v. United States Postal Service,* 857 F.2d at 1079 (6th Cir. 1988) ("an accommodation that eliminated an essential functions of the job is not reasonable.")

Moreover, Torres' request is unreasonable and poses a hardship upon UHCMC as a matter of law. Personality conflicts and issues with coworkers do not require transfer of an employee, even if the transfer is the requested accommodation. *Burdett-Foster v. Blue Cross Shield of Mich.*, 574 Fed. Appx. 672, 680 (6th Cir. 2014).

For example, in *Gaul v. AT&T, Inc.*, 955 F.Supp. 346, 353 (D. NJ 1997), the plaintiff at issue requested a transfer to a new location because his supervisor was causing him stress. *Id.* at 353.    The Tenth Circuit Court of Appeals first declared that Gaul was not disabled because "if Gaul claims he merely needed to transfer away from Folkes to accommodate his disorders, then

he is not disabled under the ADA…" *Id.*  As to the requested accommodation, the Court similarly found it to be an undue hardship upon the employer. Specifically, the Court stated that "[i]t seems, therefore, that in order to accommodate Gaul, his employer would have to insure that he would be guarded against stress and criticism.  Such accommodation is not reasonable, and would impose an undue hardship on the employer. *Id.* Like in Gaul, Torres' testimony confirms that her request also requires UHCMC to prohibit the transfer of her supervisor and coworkers to any location at which Torres is employed within UHCMC's affiliate network. Such a request is unreasonable.

Even if Torres' request was not *prima facie* unreasonable, a request to transfer is only reasonable if there is another open position for which she would have been qualified. *Burdett-Foster v. Blue Cross Shield of Mich.*, 574 Fed. Appx. 672, 680 (6th Cir. 2014).  Importantly, an employer does not violate its duty to accommodate an employee's request to transfer a position by requiring that employee to comply with its transfer procedures. *See Vinson v. Grant/Riverside Methodist Hosps.*, No. C2-00-1358, 2001 U.S. Dist. LEXIS 26372, * 34 (S.D. Ohio Aug. 30, 2001).  "Employers are not required to create new jobs, displace existing employees from their positions, or violate other employees' rights…in order to accommodate a disabled individual." *Id.* In fact, doing so would "convert a nondiscrimination statute into a mandatory preference statute, a result which would be inconsistent with the nondiscriminatory aims of the ADA." *Burns v. Coca-Cola Enters.*, 222 F.3d 247, 257 (6th Cir. 2000).  Indeed, disabled employees are not given preferential treatment and employers ultimately have the right to hire the most qualified candidate. *See Garcia v. Whirlpool Corp.*, No. 3:08-cv-02944, 2010 U.S. Dist. LEXIS 118409, *16-19 (N.D. Ohio Nov. 5, 2010); *see also Vinson*, 2011 U.S. Dist. LEXIS at *45 (S.D. Ohio Aug. 30, 2001).

UHCMC requires all internal candidates regardless of disability status to apply for positions through its transfer procedures. UHCMC does not provide preferential treatment to

employees seeking a transfer due to an alleged disability or medical restrictions. Torres does not dispute this fact and admits that UHCMC was not simply required to place her into a position. Automatically granting transfer requests regardless of whether a position is open and whether the candidate is qualified for the position would result in serious staffing and patient issues for UHCMC. UHCMC did not violate the ADA by requiring Torres to comply with its transfer procedure and UHCMC has no duty to change its transfer procedure to accommodate Torres. *See Richfield v. Fish Food Banks*, No. C14-5516, 2015 U.S. Dist. LEXIS 7430, *5-6 (W.D. Wash. Jan. 22, 2015) (overhaul of business model was not a reasonable accommodation).  Thus, Torres' accommodation request was unreasonable and Plaintiff's disability discrimination claim fails.

> **b.    UHCMC engaged in the interactive process and provided an alternative accommodation – a leave of absence to apply for alternative positions.**

"Once the employee requests an accommodation, the employer has a duty to engage in an interactive process to identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." *McDonald v. UAW-GM Ctr. For Human Res.*, 738 Fed. Appx. 848, 854 (6th Cir. 2018).

It is well-established that discussing accommodations with plaintiff and offering alternative solutions satisfies the interactive process. *Jakubowksi v. Christ Hosp., Inc.*, 627 F.3d 195, 203 (6th Cir. 2010).  It is undisputed that UHCMC engaged in the interactive process with Torres upon receiving her May 16, 2016 accommodation request: UHCMC communicated with Torres, reviewed and analyzed the medical documentation and restrictions provided by Torres' medical provider, and consulted with management, human resources, and the legal department. (Dep. Jaggie at 65-72 and Exs. 4, 5, and 6; *see also* Dep. Edgehouse at Exs. 16 and 17).

Moreover, UHCMC provided Torres with a reasonable accommodation – a medical leave of absence to apply for positions within UHCMC's affiliate network. (Dep. Torres at 98-102; *see*

16

*also* Dep. Jaggie at 67-68) *See Hudson v. First Solar, Inc.*, No. 3:12cv2292, 2014 U.S. Dist. LEXIS 200373, *10-11 (N.D. Ohio Mar 28, 2014) (a leave of absence may be an accommodation). The additional time on leave permitted Torres to remain employed by UH and apply to positions as an internal candidate, providing her with early and preferred access to job postings. (Dep. Jaggie at 67-68). Importantly, "An employee cannot force her employer to provide a specific accommodation if the employer offers another reasonable accommodation," *Talley v. Fam. Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1108 (6th Cir. 2008). "The employer providing the accommodation has the ultimate discretion to choose between effective accommodations, and may choose the less expensive accommodation or the accommodation that is easier for it to provide" *Hankins v. The Gap, Inc.*, 84 F.3d 797, 800 (6th Cir. 1996).

Finally, assuming, *arguendo*, that UHCMC did not provide Torres with an alternative accommodation – which it did – UHCMC did not have an obligation to provide a counter accommodation because it engaged in the interactive process in good faith. *McDonald v. UAW-GM Ctr. For Human Res.*, 738 Fed. Appx. 848, 854-55 (6th Cir. 2018).

Accordingly, UHCMC engaged in the interactive process and, therefore, Plaintiff's claim for disability discrimination fails as a matter of law.

### C.     Torres' Claim For Retaliation Fails As A Matter Of law.

For Plaintiff's retaliation claim, it must prove that (1) Torres engaged in a protected activity, (2) UHCMC knew about the protected activity, (3) UHCMC took an adverse employment action against Torres, and (4) there was a causal connection between the protected activity and the adverse employment action. *See Mickey v. Zeidler Tool and Die Co*., 516 F.3d 516, 523 (6th Cir. 2008). The causation standard is more stringent for a retaliation claim. *See Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360, 133 S. Ct. 2517, 186 L. Ed. 2d 503 (2013).   A complainant

must show that the defendant would not have taken the adverse action but for the protected activity. *Id.* "This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Id.* Plaintiff cannot satisfy its retaliation claim with respect to any of the protected activity engaged in by Torres.

### 1. Torres' accommodation request was denied prior to her July 2016 complaint.

Plaintiff cannot prove its claim for retaliation based upon Torres' July 28, 2016 complaint because it cannot show a causal connection between Torres' complaint and UHCMC's decision to deny Torres' accommodation. It is undisputed that UHCMC denied Torres' request for accommodation on June 29, 2016 – nearly thirty days prior to Torres' July 28, 2016 complaint. (Dep. Torres at Exs.4 and 6; *see also* Dep. Edgehouse at Exs. 26). Accordingly, Plaintiff's retaliation claim fails as a matter of law.[8] *See Sesson v. UPS*, No. 3:19-cv-01165, 2022 U.S. Dist. LEXIS 100463, *49-50 (M.D. Tenn. June 6, 2022) (plaintiff cannot establish a causal connection if the adverse action is taken before the protected activity).

### 2. No one involved in Torres' application process was aware of Torres' accommodation request.

As to Plaintiff's allegation that Torres' accommodation request played a role in UHCMC's review of Torres' applications in 2016, Plaintiff's claim similarly fails because it cannot satisfy the second and fourth elements of its prima facie case.

As to the second element, it is undisputed that the individuals involved in the hiring process were unaware of Torres' request for accommodation. (Dep. Torres at 96-98; *see also* Middleton Dec. at ¶¶ 10 and 14). Torres' testimony is consistent with the fact that no one involved in the

---

[8] To the extent that Plaintiff relies upon her July 28, 2016 restrictions and UHCMC's denial thereof, Plaintiff's claim similarly fails because UHCMC made the decision to deny those same restrictions on June 28, 2016. To the extent that Plaintiff relies upon the temporary proximity between the complaint and the second denial, temporal proximity alone is not enough to satisfy a claim for retaliation. *See See Wasek v. Arrow Energy Servs.*, 682 F.3d 463, 721-72 (6th Cir. 2012) (citing *Spengler v. Worthington Cylinders*, 615 F.3d 481, 494 (6th Cir. 2010).

hiring process was aware of Torres' accommodation request. (Decl. Middleton at ¶ 10). Accordingly, Torres cannot satisfy the second element of her prima facie case. *See Mickey v. Zeidler Tool and Die Co*., 516 F.3d 516, 523 (6th Cir. 2008) (knowledge of protected activity required to establish retaliation claim).

Even if Plaintiff could show that the hiring team was aware of Torres' accommodation request – which it cannot do – UHCMC made the decision to not select Torres because she was not the most qualified candidate for each position.  Finally, Torres was treated preferentially during the hiring process, as she was provided with coaching on interviewing. Accordingly, Plaintiff cannot show that Torres' protected activity was the "but for" cause of UHCMC's decision to not select Torres for the positions at issue and, therefore, her claim fails as a matter of law. *See Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360, 133 S. Ct. 2517, 186 L. Ed. 2d 503 (2013).

### 3.     There is no evidence that anyone involved in the hiring and scheduling at SJMC was aware of Torres' protected activity.

Finally, Plaintiff cannot satisfy the second and fourth elements of its prima facie case with respect to Torres' scheduling at SJMC.  First, there is no evidence supporting Torres' allegation that individuals involved in making scheduling decisions for PRNs at SJMC were aware of Torres' 2016 Charge or 2017 Charge.  Torres admits that she did not inform anyone at SJMC about her 2016 Charge or her 2017 Charge.  (Dep. Torres at 116-117).  Thus, Torres cannot satisfy the second element of her prima facie case. *See Mickey v. Zeidler Tool and Die Co*., 516 F.3d 516, 523 (6th Cir. 2008) (knowledge of protected activity required to establish retaliation claim).

Second, even if Plaintiff could show that the individuals responsible for PRN scheduling at SJMC knew about Torres' 2016 Charge or 2017 Charge – which they did not – Plaintiff cannot show that the charges were the "but for" cause for any scheduling decisions.  All scheduling decisions for PRNs at SJMC were made based upon need. The demand for physical therapy PRNs

at SJMC decreased in 2017. Torres admits that she is unaware of any physical therapist PRN that was provided more hours than her in 2017. (Dep. Torres at 107-08).  In fact, Torres admits that she is unaware of any physical therapy PRNs at SJMC in 2017 aside from herself. (*Id.*). However, SJMC did employ one other physical therapist PRN assigned to outpatient orthopedic rehabilitation in 2017.  Importantly, Torres received *more hours* than this PRN in 2017.

Moreover, during the interview process for the PRN position at SJMC, Torres initiated discussion concerning her issues with management at JCC and was very open with those issues during her interview.  SJMC nevertheless offered the position to Torres.  Simply put, Torres cannot show that the scheduling decisions at SJMC were causally connected to her 2016 Charge or 2017 Charge, let alone the "but for" cause.  Thus, her claim for retaliation fails as a matter of law.

## VI.    <u>CONCLUSION</u>

Based on the above arguments and authorities, summary judgment is appropriate for UHCMC on the remaining claims in Plaintiff's Complaint on the grounds that there are no disputes as to any material facts and UHCMC is entitled to judgment as a matter of law.

Respectfully submitted,

*/s/ David A. Campbell*
David A. Campbell (0066494)
Donald G. Slezak (0092422)
Lewis Brisbois Bisgaard & Smith, LLP
1375 E. 9th Street
Suite 2250
Cleveland, OH 44114
Phone: (216) 298-1262
Fax: (216) 344-9421
david.a.campbell@lewisbrisbois.com
donald.slezak@lewisbrisbois.com

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of December 2022, the foregoing was filed through the Court's CM/ECF electronic filing system.  A copy of this filing will be sent to all parties through the court's ECF system.

/s/ David A. Campbell
David A. Campbell (0066494)

*One of the Attorneys for Defendant*

21