**IN THE UNITED STATES DISTRICT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

SHELDON STEIN CHAPTER      :
7 TRUSTEE FOR THE BANKRUPTCY  :
ESTATE OF YAZMIN TORRES-DUQUM :
                                    :     CASE NO. 1:20-cv-00998-DAP
        Plaintiff           :
                                      :     JUDGE DAVID A. RUIZ
      v.                    :
                                      :
UNIVERSITY HOSPITALS         :
CLEVELAND MEDICAL CENTER    :
                                      :
        Defendant.        :

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR**
**PARTIAL SUMMARY JUDGMENT ON COUNT TWO OF THE COMPLAINT**

## <u>TABLE OF CONTENTS</u>

<u>Page No.</u>

I.   STATEMENT OF ADHERENCE TO L.R. 71 ........................................................ 1

II.  BRIEF STATEMENT OF THE ISSUES.............................................................. 1

III. SUMMARY OF THE ARGUMENT .................................................................... 1

IV. LAW AND ARGUMENT .................................................................................... 12

      A.  Standard Of Review ...................................................................................... 12

      B.  Torres' Claim For Disability Discrimination Fails As A Matter Of Law ................... 13

          1.  Torres is not disabled ........................................................................ 13

          2.  Torres' request for accommodation was unreasonable ......................................... 14

               *a.  Torres' request to be automatically transferred was unreasonable* .............. 14

               *b.  UHCMC engaged in the interactive process and provided an alternative accommodation – a leave of absence to apply for alternative positions* ...... 177

               *c.  Torres' request posed an undue hardship upon UHCMC* ............................ 178

     V.  CONCLUSION............................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
 477 U.S. 242 (1986)............................................................................................13

*Burdett-Foster v. Blue Cross Shield of Mich.*,
 574 Fed. Appx. 672 (6th Cir. 2014)...........................................................14, 15, 16

*Burns v. Coca-Cola Enters.*,
 222 F.3d 247 (6th Cir. 2000) ...............................................................3, 16, 19, 15

*Cardenas-Meade v. Pfizer, Inc.*,
 No. 3:09-CV-268, 2011 U.S. Dist. LEXIS 139782 (E.D. Tenn. Dec. 5, 2011).......................14

*Celotex Corp. v. Catrett*,
 477 U.S. 317 (1986)........................................................................................12, 13

*Fishbauch v. City of Toledo*,
 798 F.Supp.2d 888 (N.D. Ohio 2011)....................................................................13

*Fricke v. E.I. Dupont Co.*,
 219 Fed. Appx. 384 (6th Cir. 2007).................................................................2, 14

*Garcia v. Whirlpool Corp.*,
 No. 3:08-cv-02944, 2010 U.S. Dist. LEXIS 118409 (N.D. Ohio Nov. 5, 2010)....................16

*Gatlin v. East Tenn. Children's Hosp.*,
 76 F.Supp. 2d 839 (E.D. Tenn. 1998).....................................................................14

*Gaul v. AT&T, Inc.*,
 955 F.Supp. 346 (D. NJ 1997) ....................................................................2, 3, 14, 15, 20

*Gearhart v. E.I. DuPont de Nemours & Co.*,
 No. 20-3222, 2020 U.S. App. LEXIS 35175 (6th Cir. Nov. 4, 2020) ....................................14

*Hall v. United States Postal Service*,
 857 F.2d (6th Cir. 1988) .........................................................................................15

*Hankins v. The Gap, Inc.*,
 84 F.3d 797 (6th Cir. 1996) ...................................................................................18

*Hudson v. First Solar, Inc.*,
 No. 3:12cv2292, 2014 U.S. Dist. LEXIS 200373 (N.D. Ohio Mar 28, 2014)........................17

*Jakubowksi v. Christ Hosp., Inc.*,
  627 F.3d 195 (6th Cir. 2010) ............................................................................17

*Matsushita v. Zenith Radio Corp.*,
  475 U.S. 574, 586-87 (1986) ............................................................................13

*McDonald v. UAW-GM Ctr. For Human Res.*,
  738 Fed. Appx. 848 (6th Cir. 2018)...........................................................17, 18

*Neely v. Benchmark Family Servs.*,
  640 Fed. Appx. 429 (6th Cir. 2016)...................................................................13

*Richfield v. Fish Food Banks*,
  No. C14-5516, 2015 U.S. Dist. LEXIS 7430 (W.D. Wash. Jan. 22, 2015)............................16

*Siemon v. AT&T Corp.*,
  113 F.3d 1175 (10th Cir. 1997) ........................................................................14

*Talley v. Fam. Dollar Stores of Ohio, Inc.*,
  542 F.3d 1099 (6th Cir. 2008) ..........................................................................18

*Vinson v. Grant/Riverside Methodist Hosps.*,
  No. C2-00-1358, 2001 U.S. Dist. LEXIS 26372 (S.D. Ohio Aug. 30, 2001)............2, 3, 16, 19

**Statutes**

ADA.................................................................................2, 3, 13, 14, 15, 16, 17, 18, 19, 20

FMLA ...................................................................................................................5, 7

Other Authorities

L.R. 71 ...........................................................................................................................1

Local Rule 7.1 ...............................................................................................................1

<u>MEMORANDUM IN SUPPORT</u>

I.     <u>STATEMENT OF ADHERENCE TO L.R. 71</u>.

This Memorandum adheres to the page limitations set forth in Local Rule 7.1.  The present action has been assigned to the standard case management track.

I.     <u>BRIEF STATEMENT OF THE ISSUES</u>.

**A.**     Whether Yazmin Torres' ("Torres") request to be automatically transferred to a new position due to issues with coworkers was a reasonable request to accommodate an alleged disability.

**B.**     Whether Defendant University Hospitals Cleveland Medical Center ("Defendant" or "UHCMC") provided Torres with a reasonable accommodation by granting her an extended leave of absence for the purpose of applying to alternative positions.

**C.**     Whether Torres' alleged medical condition that permits her to work at any location aside from University Hospitals Rehabilitation Sports Medicine at Mandel Jewish Community Center ("JCC") due to admitted personal issues with coworkers qualifies as a disability.

III.    <u>SUMMARY OF THE ARGUMENT</u>.

UHCMC has moved for summary judgment on all remaining claims in Plaintiff's Complaint. Plaintiff filed a cross-motion for partial summary judgment only on her failure to accommodate claim.  Although containing many misstatements of fact and law, Plaintiff's Motion confirms many key facts supporting UHCMC's motion for summary judgment and confirms that judgment should be entered in favor of UHCMC on all of Plaintiff's remaining claims.

Plaintiff's Motion is based upon the false premise that (1) a request to transfer to a new position due to alleged coworker gossip qualifies as a disability; (2) that UHCMC was required to transfer Torres to a new position as a reasonable accommodation due to alleged coworker gossip;

and (3) that UHCMC cannot prove any undue hardship with respect to the requested transfer. Plaintiff's Motion fails on all three points.

Plaintiff's claim arises out of Torres'[1] former employment with UHCMC.  Although containing many misstatements of fact and law, Plaintiff's Motion confirms that Plaintiff sought to transfer from her position due to alleged coworker gossip surrounding her leave of absence from her position at University Hospitals Rehabilitation Sports Medicine at Mandel Jewish Community Center ("JCC") (Motion at 3-4).

It is well-established that "[p]ersonality conflicts, workplace stress, and being unable to work with a particular person or persons does not rise to the level of a disability or inability to work for purposes of the ADA." *Fricke v. E.I. Dupont Co.,* 219 Fed. Appx. 384, 389 (6th Cir. 2007).  Here, Torres admits that she had no medical restrictions prior to her leave of absence, was ready, willing and able to work at any location immediately outside of the JCC location, and could perform the essential functions of her position at all times during her leave of absence. Accordingly, Torres was not disabled. *See Gaul v. AT&T, Inc.*, 955 F.Supp. 346, 353 (D. NJ 1997) (a mere request to transfer away from a supervisor to accommodate alleged disability does not qualify as a disability under the ADA).

As to Torres' request for accommodation, UHCMC requires all employees seeking to transfer to apply for open positions for which the employee is qualified.   Importantly, Employers do not violate the ADA by requiring employees to follow transfer procedures. *Vinson v. Grant/Riverside Methodist Hosps.*, No. C2-00-1358, 2001 U.S. Dist. LEXIS 26372, * 34 (S.D. Ohio Aug. 30, 2001).   Indeed, an "employer satisfies its duty to reassign by allowing a disabled

---

[1] Torres filed for bankruptcy subsequent to the allegations in her Complaint and, therefore, the plaintiff in this matter is Sheldon Stein, Chapter 7 Trustee for the Bankruptcy Estate of Yazmin Torres-Duqum ("Plaintiff"). (Deposition of Yazmin Torres (hereinafter "Torres Dep. at __" at 37).

employee to compete for a position with other candidates." *Vinson v. Grant/Riverside Methodist Hosps.*, No. C2-99-1358, 2001 U.S. Dist. LEXIS 26372, *33 (S.D. Ohio Aug. 30, 2011) (internal citation omitted).  In fact, employers are not automatically required to grant accommodation requests seeking to transfer positions, as doing so would "convert a nondiscrimination statute into a mandatory preference statute, a result which would be inconsistent with the nondiscriminatory aims of the ADA." *See Burns v. Coca-Cola Enters.*, 222 F.3d 247, 257 (6th Cir. 2000).  Indeed, permitting Torres to automatically transfer to a new position due to a personal conflict is inconsistent with UHCMC policy and poses an undue hardship upon UHCMC.  *See Gaul v. AT&T, Inc.*, 955 F.Supp. 346, 353 (D. NJ 1997).

Accordingly, Torres' disability discrimination claim fails as a matter of law and this Court should grant UHCMC's Motion for Summary Judgment and terminate this matter.

## IV.     RELEVANT AND UNDISPUTED FACTS

UHCMC has moved for summary judgment on all of Plaintiff's remaining claims in the Complaint.  Although only moving for summary judgment on the reasonable accommodation claim, Plaintiff's Motion includes facts in support of its claim for retaliation.   UHCMC set forth a complete version of the facts relevant to this matter in its motion and, therefore, will only address facts relevant to the sole claim for which Plaintiff's moves upon.   However, as set forth in UHCMC's motion for summary judgment and in this Opposition, there is no dispute that (1) Torres requested to transfer from the JCC due to a personal issue with coworkers; (2) Torres admits she could work in any location aside from the JCC; (3) UHCMC provided Torres with an alternative reasonable accommodation – an extended leave of absence to apply for alternative positions; (4) no one involved in the hiring process knew of Torres' accommodation request; (5) Torres obtained alternative employment at St. John's Medical Center ("SJMC") and no one involved in the hiring

process or scheduling knew of Torres' alleged protected activity; and (6) Torres obtained UHCMC-affiliated employed following SJMC, and Torres admits that she does not raise any issues with this employment, which has since concluded.

### A. Torres Never Submitted Workplace Restrictions During Her Long Tenure With UHCMC Prior to February 2016 .

Torres was a long-time employee within UHCMC's affiliate network. (Deposition of Yazmin Torres (hereinafter "Dep. Torres at __") at 23-24).[2] Torres' Complaint takes issue with her employment at JCC and SJMC. (*See generally*, Complaint).

Torres began her employment as a Senior Physical Therapist at JCC in December 2014. (Dep. Torres at 23-24 and Ex.5). Torres admits that she did not have any issues at the JCC or with any coworkers prior to February 10, 2016. (Dep. Torres 56). Torres admits that she did not submit any workplace medical restrictions prior to the allegations giving rise to Plaintiff's Complaint. (Dep. Torres at 56). In fact, Torres worked as a physical therapist at JCC the day immediately before entering an extended leave of absence from which she never returned. (Dep. Torres at 56).

### B. Torres Suffered A Miscarriage In February 2016 And Is Granted An Approved Medical Leave Of Absence.

On February 10, 2016 Torres suffered a miscarriage. (Dep. Torres at 56-57). Torres informed UHCMC that same day that she would be absent for the week. (Dep. Torres at 59,60, and 66). Torres did not inform UHCMC the reason for her absence. (Dep. Torres at 59-60). In fact, Torres kept her pregnancy and miscarriage confidential from UHCMC. (Dep. Torres at 66-67, 69 and Ex.3). However, Torres admits to telling two JCC coworkers and another former co-worker who transferred out of JCC, Amanda Gideon, about the miscarriage in the days following

---

[2] A copy of Torres' deposition has been filed with the Court. (*See* Docket as ECF # 43).

the miscarriage. (Dep. Torres at 64-67, 69 and Ex. 3). Following the miscarriage, Torres went on

approved FMLA leave and never returned to the JCC. (Dep. Torres at 24, 30,56-57, 84, and 112).

### C.   Torres Informs Coworkers Of The Miscarriage And Requests A Transfer Due To Alleged Coworker Discussions Concerning Her Leave Of Absence.

On February 11, 2016 Torres' coworkers met outside of work hours for an event. (Dep.

Torres at 67-68 and Ex. 3).  The event included several employees, including Amanda Gideon.

(Dep. Torres at 68-69).  Ms. Gideon texted Torres concerning coworker speculation about Torres'

absence during the event. (Dep. Torres at 64-69 and Ex. 3).  Specifically, Ms. Gideon alleged that

Torres' coworkers were speculating that Torres had called off work due to a gymnastics meet the

upcoming weekend. ((Dep. Torres at 64-68 and Ex. 3).

### D.   Torres Refused To Return To The JCC Due To The Alleged Coworker Gossip.

There is no dispute that Plaintiff did not suffer her miscarriage at the JCC location. (Dep.

Torres at 56-57).  Rather, Plaintiff concedes in the Motion that Torres refused to return to the JCC

due to the alleged co-worker gossip concerning her medical leave of absence. (Motion at 3-4).  The

alleged co-worker gossip is conceded to be central to Plaintiff's alleged medical issues and request

to transfer from the JCC:

> "And her colleague continued to report to her that coworkers were
> gossiping about her medical history and mental state, causing her
> further anguish.  As she worked with her therapist, it became
> apparent to them both that the physical location of the JCC became
> the trigger for her post-traumatic stress."

(Motion at 4).

Torres spoke with her supervisor, Nate Tekavec, shortly after the work event. (Dep. Torres

at 58-60).  Torres informed Mr. Tekavec of the miscarriage. (Dep. Torres at 60).  Torres also

requested to transfer out of the JCC due to the gossip surrounding her absence:

> **Q**: Okay. And what did those – I guess, first of all, what do you
> recall from the phone calls?

A: …After I got off that phone call, I received a message, or the next day, if I was okay, from Nate, and then I found out what was being said about me and what was being disclosed, and that's when I told Nate that I needed a transfer for my physical, mental, and emotional wellbeing…"

(Dep. Torres at 59-60).

Q: Okay. And then it says, from you, "I just texted Nat[e] and ripped him a new one and that I'm filing a grievance with UH and I need to be transferred ASAP.  So done with this shit." What did Nate do?
A:  I told Nate that I had applied for a different location because of the current situation, and I needed to remove myself from this, as dealing with this was spiraling my anxiety and PTSD out of control…
Q:  Okay. Well, we'll - -
A:  And I told him the whole situation, and that people who did not know about my pregnancy were talking about it, and all my medical history, my previous losses, everything was being exposed.
Q:  But this one seemed like Nate did something wrong. "I ripped him a new one." And let me restate it.  Your text says, "I ripped him a new one," referring to Nate.  What had Nate done wrong to this point?
A:  Perpetuated the rumors of what was being done.
Q: And what was being - - I see a lot of texts here, and I don't see - -
A:  What I was hearing was that there was gossip about my medical history, my mental state, that I was just not showing up for work for gymnastics. So by saying "I ripped him a new one" is just my anger, my grief right now. I literally told him that I needed a transfer, and that he was not stopping anything from the rumors and stuff from happening.

(Dep. Torres at 70-71).

Nate Tekavec's testimony confirms this fact:

Q:      What was your understanding of why she was requesting to transfer?
A:      I remember taking a phone call from her.  She was teary and called me.  She was sating that there was talk within my clinic as far as her miscarriage and felt that with the gossip within the clinic at the time, with her health issue, that she could no longer work with the individuals in the clinic…

(Deposition of Nate Tekavec (hereinafter "Dep. Tekavec at ____") at 6-8).

**Q:** Do you remember her telling you she wanted to be transferred because she was having panic attacks?

**A:** I – no. I do not. I remember her saying she wanted to be transferred because of her concerns of not wanting to be able to work with the – the people and the environment in the JCC.

(Dep. Tekavec at 43).

### E.   Torres Submits An Accommodation Request Due To The Alleged Coworker Speculation Concerning Her Miscarriage.

Torres submitted a request for accommodation on May 16, 2016. (Deposition of Lisa Edgehouse (hereinafter "Edgehouse Dep. at __) at 75, 84 and Ex. 16). [3]   Upon receipt of Torres' accommodation request, UHCMC immediately engaged in the interactive process by first providing Torres with a reasonable accommodation by extending her leave of absence beyond the expiration of her FMLA on May 16, 2016. (Dep. Torres at 67-68, 98; *see also* Dep. Edgehouse at 14).   As to the request, the form alleged that Torres' disability was "anxiety" that "limits her focus." (Edgehouse Dep at Ex. 16). As to a proposed accommodation, Torres' medical provider indicated it was permanent and stated Torres must work: "[i]n an environment of respect and acceptance Yazmin's anxiety should decrease." (*Id.* at Ex. 16).

Torres sent a revised request on June 2, 2016. (Dep. Edgehouse at Ex. 17).  The request modified Torres' disability to be "anxiety; panic attacks," and requested the following permanent accommodation: "[c]hange of location of work environment and flexibility." (*Id.* at Ex. 17).  As to the accommodation request, Torres testified that she was able to work in any location other than the JCC. (Dep. Torres at 85).  Plaintiff testified that she could perform all the job duties of a physical therapist but could only do so at a location other than the JCC. (*Id.* at 86). In fact, Torres admitted that she was ready and able to work as early as February 16, 2016 and was applying for positions within the UHCMC network at that time. (*Id.* at 95 and 97).

---

[3] A copy of Lisa Edgehouse's deposition has been filed with the Court. (*See* ECF # 39).

On June 16, 2022, Torres' medical provider submitted a return to work authorization that cleared Torres to return to work without restriction on July 1, 2016. (Dep. Torres at Ex. 4).

**F.**     **Plaintiff's Motion And The Record Make Clear That UHCMC Engaged In The Interactive Process.**

Plaintiff concedes in the Motion that Torres and her medical provider worked with several individuals within UHCMC for many weeks on the accommodation request. (Motion at 3-8).  Lisa Edgehouse was the employee responsible for communicating with Torres and Torres' medical provider about Torres' request. (Dep. Edgehouse at 81-82).   Ms. Edgehouse was not involved with making decisions concerning Torres' accommodation request.  (*Id.* at 17, 31-32, 77-78).  In fact, Ms. Edgehouse's role was limited to that of an intermediary between Torres and Torres' medical provider and the ultimate decisionmakers with respect to the accommodation request:

> **Q:** And you did that looking for ways for the employer to physically accommodate the employee's disability?
> **A:** No.  I did not look for ways for the employer to accommodate the disability.   What I would do would be send what the accommodations – what the restrictions – excuse me – the provider had and would relay it to the supervisors and HR generalists, what the restrictions they had on their job description."

(Dep. Edgehouse at 16-17).

UHCMC evaluated both accommodation forms submitted by Torres' medical provider to determine whether there was sufficient information to make a determination and whether the determination could be made.  (Deposition of Valerie Jaggie (hereinafter "Dep. Jaggie at __") at 65-72 and Exs. 4, 5, and 6).[4]  UHCMC communicated with Torres' medical provider to determine whether Torres could perform the essential functions of her position. (Dep. Torres at Ex. 5). UHCMC sent the essential functions for Torres' position to Torres' medical provider on May 18, 2016, requesting that Torres' medical provider evaluate the essential functions and determine

---

[4] A copy of Valerie Jaggie's deposition has been filed with this Court. (*See* ECF # 39).

whether Torres could perform those essential functions. (*Id.* at Ex. 5).   UHCMC also communicated with Torres, analyzed the medical documentation and restrictions provided by Torres' medical provider, and consulted with individuals in management, human resources, and legal. (Dep. Jaggie at 65-72 and Exs. 4, 5, and 6; *see also* Dep. Edgehouse at Exs. 16 and 17).

     **G.**     **UHCMC Policies Do Not Provide For Automatic Transfers To New Positions.**

Plaintiff's Motion makes several misrepresentations to the record concerning UHCMC's employee transfer procedures.  For example, Plaintiff states that "Jaggie admitted that Tekavec could have transferred Torres to another location if he chose to do so…" (Motion at 8).  However, Jaggie testified that Tekavec could not simply make the decision to transfer Torres: "Q:…but Nate Tekavec had the authority to [transfer Torres]…A: I don't know that that's a decision because he's not the hiring manager."  (Dep. Jaggie at 70-71).

Tekavec confirmed that he did not have the ability to simply transfer Torres to a new position; rather Torres would have to apply for an open and available position and ultimately be selected for the position. (Dep. Tekavec at 6-11, 13-14). UHCMC does not have a process for automatically transferring employees to new positions, regardless of alleged disability status or medical restrictions. (Deposition Christine Middleton (hereinafter "Dep. Middleton at __")[5] at 24-26 *see also*; *see also* Declaration of Christine Middleton (hereinafter "Decl. Middleton at __") at ¶ 12).[6]  Rather, all employees, regardless of alleged disability status, apply for positions through the University Hospitals standard application and transfer process. (Dep. Middleton at 24-26; *see also* Decl. Middleton at ¶ 5).  Employees are not simply granted transfers automatically – there must be an open position and the employee must be qualified for the position. (Dep. Middleton at 24-26 and 82-83; *see also* Decl. Middleton at ¶¶ 2-5). Indeed, permitting employees to simply

---

[5] A copy of Christine Middleton's deposition has been filed with this Court. (*See* docket at ECF # 41).
[6] A copy of Christine Middleton's declaration has been filed with this Court. (*See* docket at ECF # 45-1).

transfer into positions automatically would negatively impact patient care. (Dep. Middleton at 103).  Torres admits that she must go through this process and that UHCMC did not have an obligation to simply transfer her to any open position. (Dep. Torres at 99 and 101-102).

In Plaintiff's Motion, Plaintiff alleges that UHCMC could have transferred Torres and has transferred employees in the past: "For example, if an employee is on leave, Defendant will move an employee from another location to cover that employee's workload until they return…Such transfers cause no hardship to Defendant." (Motion at 9).  Plaintiff ignores the unambiguous testimony that UHCMC does not automatically provide permanent transfers to new positions:

> **Q:**  Okay. During your 14 years has there been anybody who's transferred out of their location or department on a permanent basis without going through the job posting procedure?
> **A:** Not that I'm aware of…
> (Dep. Jaggie at 132).
> **Q:** Okay. During your five years as Supervisor at JCC, did any physical therapists transfer into the JCC on a permanent basis without going through the job posting procedure?
> **A.** No.
> **Q:**  During your five years as a Supervisor at the JCC, did any of your physical therapists transfer out of the JCC into another position at UH, without going through the job posting procedure?
> **A:**  No.

(Dep. Tekavec at 100).

Plaintiff misrepresents that UHCMC gives internal applicants preference in the transfer process. (Motion at 12: "Defendant passed over Torres and hired external candidates even though Defendant gives internal candidates preference over external candidates.").  Plaintiff goes so far as to state"[i]f a qualified internal candidate applies who satisfies the manager's needs, the manager does not consider the external candidates. (Motion at 12). Ms. Jaggie testified that internal candidates are not given preference in hiring decisions, only a first look at open applications:

> **Q:**  Okay. If an internal candidate is applying for a position and there are external candidates, does the internal candidate get preferential hiring over the external candidate?

**A:**  And a position when it's posted is posted internally first for five days.  So, yes, an internal candidate does have preference because before they even look external they are looking at the internal candidate.

**Q:**  And so is it true that if there is a qualified internal candidate that the manager is required to hire the internal candidate over the external candidate?

**A:**  I don't think it's required because they may have the skill set, but if they don't feel it's the right mix for the patients or for the team they do have the right to still look external as well.

(Dep. Jaggie at 48).

### H.  UHCMC Denied Torres' Accommodate Request Because It Was Unreasonable And Posed An Undue Hardship.

UHCMC denied Torres' request for accommodation. (Dep. Edgehouse at Ex. 26). UHCMC denied the request because there was no specific accommodation identified by Torres' medical provider and no indication that Torres could not perform the essential functions of her position at her current job assignment. (Dep. Edgehouse at Ex. 26).  Torres was notified via a phone call with Ms.  Jaggie and subsequently by letter dated June 29, 2016. (*Id.* at Ex. 26).

As set forth above, Ms. Edgehouse was not involved in the decision to deny Torres' accommodation request. (Dep. Edgehouse at 127).  Ms. Edgehouse was unaware of the reasons why the accommodation was denied and is not involved in the decision as to whether the accommodation causes UHCMC an undue burden. (Dep. Edgehouse at 128).

### I.  UHCMC Provides Torres With A Reasonable Accommodation Of An Extended Leave Of Absence When She Refuses To Return To Work.

Because Torres' accommodation request was denied, she was expected and required to report to work by July 1, 2016. (Dep. Torres at Ex. 6).  Torres, however, refused to return to work. (Dep. Torres at 90-91 and Ex. 6).  UHCMC sent a letter to Torres on July 15, 2016 requesting that Torres either report to work or provide UHCMC with additional medical certification justifying her absence by July 25, 2016. (Dep. Torres at Ex. 6).  The July 25, 2016 letter also informed Torres

that her failure to comply with the requirements by July 29, 2016 would result in her termination due to job abandonment. (Dep. Torres at Ex. 6).  Torres did not report to work or provide medical documentation supporting an additional leave of absence. (*Id.* at 90-91 and Ex. 7).

UHCMC sent a second letter to Torres on July 25, 2016 requesting that Torres report to work or provide medical certification pertaining supporting her absence. (Dep. Torres at Ex. 7). The letter informed Torres that her failure to comply by August 1, 2016 would result in Torres' position being posted and filled. (*Id.* at Ex. 7).  The letter informed Torres that she could apply for open positions within the UHCMC affiliate network. (*Id.* at Ex. 7).

On July 28, 2016, Torres provided a revised return to work authorization that restricted her from returning to work at the JCC location. (Dep. Edgehouse at Ex. 32).  This was the same request previously submitted by Torres and denied by UHCMC. (*Id.* at Exs. 26 and 32).  Accordingly, UHCMC provided Torres with an alternative accommodation – an extended leave of absence to enable Torres to apply for open positions for which she was qualified. (*Id.* at 33; *see also* Dep Torres at 98-101; Dep. Jaggie at 67-68).  Torres failed to return to work at the JCC and, instead, went on the leave of absence. (Dep. Torres at 90-91 and 98-101).

### J. Torres Applied To Positions Through University Hospitals' Standard Transfer Procedure.

Torres applied to 21 positions in 2016. (Dep. Torres at 94 and Ex. 8). Torres ultimately obtained employment at SJMC in late 2016. Torres admits that she did not have any medical restrictions and was able to work. (*Id.* at 87-88, 94, 119, and 125).

## IV. LAW AND ARGUMENT

### A. Standard Of Review.

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

Civ. P. 56(a).  The movant bears the initial responsibility identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party can meet this burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

Only disputes between the parties over facts that might affect the outcome of the case properly preclude entry of summary judgment.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249.  "[E]vidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." *Id.*  at 255; *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).   Plaintiff cannot meet this burden and its Motion should be denied.

**B.**     **Torres' Claim For Disability Discrimination Fails As A Matter Of Law.**

In order for Plaintiff to prove its claim for failure to accommodate, Plaintiff must prove that (1) Torres is disabled; and (2) UHCMC failed to provide the necessary accommodation. *See Fishbauch v. City of Toledo*, 798 F.Supp.2d 888, 895 (N.D. Ohio 2011)(citing *Myers v. Cuyahoga County*, 182 Fed.Appx. 510, 515 (6th Cir. May 31, 2006)).  Plaintiff cannot meet this burden

**1.**     **Torres is not disabled.**

A person is disabled pursuant to the ADA if they suffer from a physical or mental impairment that substantially limits one or more of their major life activities. *See Neely v. Benchmark Family Servs.*, 640 Fed. Appx. 429, 432-33 (6th Cir. 2016).

Torres admits that she is unwilling to return to the JCC because of a personal conflict with her coworkers. Importantly, "[p]ersonality conflicts, workplace stress, and being unable to work

with a particular person or persons does not rise to the level of a disability or inability to work for purposes of the ADA." *Fricke v. E.I. Dupont Co.,* 219 Fed. Appx. 384, 389 (6th Cir. 2007); *see also Burdett-Foster v. Blue Cross Shield of Mich.*, 574 Fed. Appx. 672, 680 (6th Cir. 2014). "The major life activity of working is not substantially limited if plaintiff merely cannot work under a certain supervisor because of anxiety and stress…" *Cardenas-Meade v. Pfizer, Inc.*, No. 3:09-CV-268, 2011 U.S. Dist. LEXIS 139782, *15-16 (E.D. Tenn. Dec. 5, 2011). Inability to work with coworkers or supervisors is not a disability as it does not prevent the plaintiff "from performing a class of jobs or a broad range of jobs." *Siemon v. AT&T Corp.*, 113 F.3d 1175 (10th Cir. 1997).

This holds true even where the alleged disability results in a request to transfer. *See, e.g., Gaul v. AT&T, Inc.*, 955 F.Supp. 346, 353 (D. NJ 1997) (a request to transfer away from a supervisor to accommodate a disability does not qualify as a disability). In fact, "if [plaintiff] is disabled due to his depression and stress disorders, then there mere transfer would be unlikely to accommodate his handicap." *Gaul v. AT&T, Inc.*, 955 F.Supp. 346, 353 (D. NJ 1997).

Here, Torres never submitted workplace restrictions prior to February 2016. (Dep. Torres at 56). Torres did not suffer her miscarriage at the JCC. Torres admits that she can work and perform the essential functions of her position, and has done so, without restriction anywhere aside from the JCC. (*Id.* at 86). Thus, Torres is not disabled and her claim fails as a matter of law.

### 2. Torres' request for accommodation was unreasonable.

#### a. *Torres' request to be automatically transferred was unreasonable.*

"[T]he employee bears the initial burden of proposing an accommodation and showing that the accommodation is objectively reasonable." *Gatlin v. East Tenn. Children's Hosp.*, 76 F.Supp. 2d 839, 841 (E.D. Tenn. 1998). "The plaintiff bears the initial burden of showing that an accommodation seems reasonable on its face, *i.e.*, ordinarily or in the run of cases." *Gearhart v.*

*E.I. DuPont de Nemours & Co.*, No. 20-3222, 2020 U.S. App. LEXIS 35175, *15 (6th Cir. Nov. 4, 2020).  If successful, then the burden shifts to the employer to demonstrate undue hardship. *Id.*

Torres requested to be automatically transferred to a position outside of the JCC due to a conflict with her supervisor and coworkers. Torres' request necessarily requests UHCMC to eliminate an essential function of her position – reporting to work at her assigned location. UHCMC is not required to eliminate an essential function of a position in order to accommodate a request. *See Hall v. United States Postal Service,* 857 F.2d at 1079 (6th Cir. 1988) ("an accommodation that eliminated an essential functions of the job is not reasonable.")

Moreover, Torres' request is unreasonable and poses a hardship upon UHCMC as a matter of law. Personality conflicts and issues with coworkers do not require transfer of an employee, even if the transfer is the requested accommodation. *Burdett-Foster v. Blue Cross Shield of Mich.*, 574 Fed. Appx. 672, 680 (6th Cir. 2014).

For example, in *Gaul v. AT&T, Inc.*, 955 F.Supp. 346, 353 (D. NJ 1997), the plaintiff at issue requested a transfer to a new location because his supervisor was causing him stress. *Id.* at 353.  The Tenth Circuit Court of Appeals first declared that Gaul was not disabled because "if Gaul claims he merely needed to transfer away from Folkes to accommodate his disorders, then he is not disabled under the ADA…" *Id.*  As to the requested accommodation, the Court similarly found it to be an undue hardship upon the employer. Specifically, the Court stated that "[i]t seems, therefore, that in order to accommodate Gaul, his employer would have to insure that he would be guarded against stress and criticism.  Such accommodation is not reasonable, and would impose an undue hardship on the employer." *Id.* Like in Gaul, Torres' testimony confirms that her request also requires UHCMC to prohibit the transfer of her supervisor and coworkers to any location at which Torres is employed within UHCMC's affiliate network. Such a request is unreasonable.

Even if Torres' request was not *prima facie* unreasonable, a request to transfer is only reasonable if there is another open position for which she would have been qualified. *Burdett-Foster v. Blue Cross Shield of Mich.*, 574 Fed. Appx. 672, 680 (6th Cir. 2014).  Importantly, an employer does not violate its duty to accommodate an employee's request to transfer a position by requiring that employee to comply with its transfer procedures. *See Vinson v. Grant/Riverside Methodist Hosps.*, No. C2-00-1358, 2001 U.S. Dist. LEXIS 26372, * 34 (S.D. Ohio Aug. 30, 2001).  "Employers are not required to create new jobs, displace existing employees from their positions, or violate other employees' rights…in order to accommodate a disabled individual." *Id.* In fact, doing so would "convert a nondiscrimination statute into a mandatory preference statute, a result which would be inconsistent with the nondiscriminatory aims of the ADA." *Burns v. Coca-Cola Enters.*, 222 F.3d 247, 257 (6th Cir. 2000).  Indeed, disabled employees are not given preferential treatment and employers ultimately have the right to hire the most qualified candidate. *See Garcia v. Whirlpool Corp.*, No. 3:08-cv-02944, 2010 U.S. Dist. LEXIS 118409, *16-19 (N.D. Ohio Nov. 5, 2010); *see also Vinson*, 2011 U.S. Dist. LEXIS at *45 (S.D. Ohio Aug. 30, 2001).

UHCMC requires all internal candidates to apply for positions through its transfer procedures. UHCMC does not provide preferential treatment to employees seeking a transfer due to an alleged disability or medical restrictions. Torres admits that UHCMC was not required to place her into a position.  Automatically granting transfer requests regardless of whether a position is open and whether the candidate is qualified would result in serious staffing and patient issues for UHCMC. UHCMC did not violate the ADA by requiring Torres to comply with its transfer procedure and UHCMC has no duty to change its transfer procedure to accommodate Torres. *See Richfield v. Fish Food Banks*, No. C14-5516, 2015 U.S. Dist. LEXIS 7430, *5-6 (W.D. Wash. Jan.

22, 2015) (overhaul of business model was not a reasonable accommodation). Thus, Torres' accommodation request was unreasonable and Plaintiff's disability discrimination claim fails.

> ### b. UHCMC engaged in the interactive process and provided an alternative accommodation – a leave of absence to apply for alternative positions.

"Once the employee requests an accommodation, the employer has a duty to engage in an interactive process to identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." *McDonald v. UAW-GM Ctr. For Human Res.*, 738 Fed. Appx. 848, 854 (6th Cir. 2018).

Discussing accommodations with a plaintiff and offering alternative solutions satisfies the interactive process. *Jakubowksi v. Christ Hosp., Inc.*, 627 F.3d 195, 203 (6th Cir. 2010). It is undisputed that UHCMC engaged in the interactive process with Torres upon receiving her May 16, 2016 accommodation request: UHCMC communicated with Torres, reviewed and analyzed the medical documentation and restrictions provided by Torres' medical provider, and consulted with management, human resources, and the legal department. (Dep. Jaggie at 65-72 and Exs. 4, 5, and 6; *see also* Dep. Edgehouse at Exs. 16 and 17).

Plaintiff argues that UHCMC violated the ADA by factoring its business needs when evaluating Torres' request. (Motion at 18). However, an employer can evaluate the needs of its business when evaluating an accommodation. *See Green v. Bakemark USA, LLC*, No. 1:13-cv-841, 2016 U.S. Dist. LEXIS 6439, *22 and *31 (S.D. Ohio Jan. 20, 2016) (summary judgment granted where employer evaluated business needs during interactive process); *see also Wheeler v. Jackson Nat's Life Ins. Co.*, 159 G.Supp. 3d 828, 855 and n. 7 (M.D. Tenn. 2016) (same).

Moreover, UHCMC provided Torres with a reasonable accommodation – a medical leave of absence to apply for positions within UHCMC's affiliate network. (Dep. Torres at 98-102; *see also* Dep. Jaggie at 67-68) *See Hudson v. First Solar, Inc.*, No. 3:12cv2292, 2014 U.S. Dist. LEXIS

200373, *10-11 (N.D. Ohio Mar 28, 2014) (a leave of absence may be an accommodation). The additional time on leave permitted Torres to remain employed by UH and apply to positions as an internal candidate, providing her with early and preferred access to job postings. (Dep. Jaggie at 67-68).  Importantly, "An employee cannot force her employer to provide a specific accommodation if the employer offers another reasonable accommodation," *Talley v. Fam. Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1108 (6th Cir. 2008). "The employer providing the accommodation has the ultimate discretion to choose between effective accommodations, and may choose the less expensive accommodation or the accommodation that is easier for it to provide" *Hankins v. The Gap, Inc.*, 84 F.3d 797, 800 (6th Cir. 1996).

Finally, assuming, *arguendo*, that UHCMC did not provide Torres with an alternative accommodation – which it did – UHCMC did not have an obligation to provide a counter accommodation because it engaged in the interactive process in good faith.  *McDonald v. UAW-GM Ctr. For Human Res.*, 738 Fed. Appx. 848, 854-55 (6th Cir. 2018). Thus, UHCMC engaged in the interactive process and Plaintiff's claim for disability discrimination fails as a matter of law.

### c. Torres' request posed an undue hardship upon UHCMC.

Assuming, *arguendo*, that Torres can satisfy her prima facie case – which she cannot do – UHCMC can prove that the requested accommodation posed an undue burden upon UHCMC. Relevant to this Motion, the ADA evaluates several factors in determining whether an accommodation poses an undue hardship, including  the nature of the accommodation, the type of operation at issue, and the impact upon operations. *See* 42 USCS § 12111(10)(B)(i-iv).

Plaintiff argues that UHCMC does not have a policy against transferring employees and that UHCMC transfers employees when it suits its needs. (Motion at 19).  As set forth above, UHCMC has a policy that all employee transfers must follow – employees are not automatically

transferred to new positions.  Further, Tekavec testified that he is unaware of any employee, including those holding the same position as Torres, who has been permanently transferred to a new position without following UHCMC's transfer policies. (Dep. Tekavec at 100).

Plaintiff next argues that "[t]he law does not allow defendant to avoid transferring a disabled employee as an accommodation merely by claiming another applicant was better qualified." (Motion at 19).  However, as set forth above, "[t]he ADA does not require an employer to reassign a disabled employee to a job for which there is a better applicant, provided it's the employer's consistent and honest policy to hire the bets applicant for the particular job in question rather than the first qualified applicant." *Vinson*, 2001 U.S. Dist. LEXIS 26372, *36 (S.D. Ohio Aug. 30, 2011).  An "employer satisfies its duty to reassign by allowing a disabled employee to compete for a position with other candidates." *Id.* at *33 (internal citation omitted).

Finally, Plaintiff incorrectly argues that the Sixth Circuit in *Burns* "recognized only that 'reassignment is not required if it would violate other employees' rights under a seniority system or collective bargaining agreement.'" (Motion at 19).  However, the Sixth Circuit in *Burns* stated: "[w]e do not, however, hold that the employer must reassign the disabled employee to a position for which he is not otherwise qualified, or that the employer must waive legitimate, non-discriminatory employment policies or displace other employees' rights to be considered in order to accommodate the disabled individual." *Burns,* 222 F.3d at 257 (6th Cir. 2000).  Simply put, UHCMC may require Torres to comply with its transfer policies and protocols.

UHCMC requires all employees, regardless of disability or medical restrictions, to comply with its internal transfer policies.  All employees are required to apply for open positions – employees are not automatically transferred to positions.  Torres was provided with the opportunity to apply for open positions, Torres applied for open positions, and UHCMC made

legitimate, non-discriminatory decisions with respect to the hiring of each position. UHCMC's policies are lawful, consistent with Sixth Circuit authority and the ADA, and Torres' request to sidestep the policies by automatically transferring her to a new position due to a personal conflict poses an undue burden upon UHCMC. *See* 42 USCS § 12111; *see also Gaul v. AT&T, Inc.*, 955 F.Supp. 346, 353 (D. NJ 1997) (a transfer due to personal conflict would require the employer to insure protection from such conflicts in the future, which is unreasonable and an undue hardship).

## V.    **CONCLUSION**

UHCMC has moved for summary judgment on all remaining claims in Plaintiff' Complaint.  Based on the above arguments and authorities, Plaintiff's Motion should confirms that there are no genuine issues of material fact and that UHCMC is entitled to judgment as a matter of law on Plaintiff's claims.  Accordingly, this Court should deny Plaintiff's Motion and grant UHCMC's Motion for Summary Judgement as there are no disputes as to any material facts and UHCMC is entitled to judgment as a matter of law.

Respectfully submitted,

*/s/ David A. Campbell*
David A. Campbell (0066494)
Donald G. Slezak (0092422)
Lewis Brisbois Bisgaard & Smith, LLP
1375 E. 9th Street
Suite 2250
Cleveland, OH 44114
Phone: (216) 298-1262
Fax: (216) 344-9421
david.a.campbell@lewisbrisbois.com
donald.slezak@lewisbrisbois.com

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of January 2023, the foregoing was filed through the Court's CM/ECF electronic filing system.  A copy of this filing will be sent to all parties through the court's ECF system.


*/s/ David A. Campbell*
David A. Campbell (0066494)

*One of the Attorneys for Defendant*