# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO

|  |  |
|---|---|
| SHELDON STEIN<br>CHAPTER 7 TRUSTEE FOR THE<br>BANKRUPTCY ESTATE OF<br>YAZMIN TORRES-DUQUM<br><br>*Plaintiff,*<br><br>vs.<br><br>UNIVERSITY HOSPITALS<br>CLEVELAND MEDICAL CENTER.<br><br>*Defendants.* | Case    1:20-cv-00998<br><br>Judge David A. Ruiz<br><br>PLAINTIFF'S MEMORANDUM IN<br>OPPOSITION TO DEFENDANT'S MOTION<br>FOR SUMMARY JUDGMENT |

Plaintiff, Sheldon Stein, Chapter 7 Trustee for the Bankruptcy Estate of Yazmin Torres-Duqum, respectfully submits the attached Memorandum in opposition to Defendants' motion for summary judgment.

Respectfully submitted,

  */s/ Cathleen Bolek*
Cathleen M. Bolek (0059884)
Matthew D. Besser (0078071)
**BOLEK BESSER GLESIUS LLC**
Monarch Centre, Suite 302
5885 Landerbrook Drive
Cleveland, Ohio 44124
T 216.464.3004
cbolek@bolekbesser.com
mbesser@bolekbesser.com
*Counsel for Plaintiff*

# TABLE OF CONTENTS

I.  Statement of Issue to be Decided ……………………………………………...……..1

II.  Summary of Argument……..……………………………………………………………1

III.  Statement of Facts…..………………………………………………………………...1

   A.  Torres is disabled…...…………………………………………………………….1

   B.  Torres provides medical documentation establishing her need for a transfer as an accommodation of her disability……………………………………...…….…………2

   C.  Defendant denies Torres' request for accommodation…...………………….…..4

   D.  Accommodating Torres does not cause undue hardship………………..……………5

   E.  Defendant retaliates against Torres……………………………..……………………5

      1.  Torres engages in protected activity by making internal complaints that her ADA rights were violated…………...…………………..5

      2.  Defendant retaliates against Torres because of her internal complaints………………………………………….…..6

      3.  Defendant retaliates against Torres because she filed a charge with the EEOC……………………………………...…..8

IV.  Law and Argument………………………………………...…..…………..9

   A.  Standard of Review………………………………………….…………....9

   B.  The evidence establishes that Defendant failed to accommodate Torres……………..9

      1.  Torres is disabled …………….…………………………………..…10

      2.  Torres is otherwise qualified for her position with a reasonable accommodation…………………….……………………..……….11

      3.  Torres requested a transfer to an available position for which she was qualified as an accommodation……………………………………11

      4.  Defendant failed to accommodate Torres……………………..……...…11

5.   There is no competent evidence that transferring Torres would have imposed an undue hardship on Defendant………………………...…………..14

C.   Defendant retaliated against Torres………………………………………………15

V.    Conclusion………………………………………………………...…………20

Certificate of Service…………………………………………………….………....21

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986)……………………………….…………9

*US Airways, Inc. v. Barnett*, 535 U.S. 391 (2002)……………….…………………..……………13

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, (1986)………………………..9

*Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284 (D.C. Cir. 1998)………………….……………..9

*Beaven v. U.S. Dep't of Justice,* 622 F.3d 540 (6th Cir. 2010)…..………………………17, 18

*Burns v. Coca-Cola Ents.*, 222 F.3d 247 (6th Cir.2000)………………………...……9, 12, 14, 15

*EEOC v. United Airlines, Inc.*, 693 F.3d 760 (7th Cir. 2012)……………………….…..…..15

*Fuhr v. Hazel Park Sch. Dist.,* 710 F.3d 668 (6th Cir. 2013)…………………………………16

*Garner v. Cuyahoga Cnty. Juvenile Court,* 554 F.3d 624 (6th Cir. 2009)…………………………16

*John B. v. Goetz*, 531 F.3d 448 (6th Cir. 2008)………………………………………..…17

*King v. Steward Trumbull Mem'l Hosp., Inc.,* 30 F.4th 551 (6th Cir. 2022)………………………11

*Kurtzhals v. Cty. of Dunn*, 969 F.3d 725 (7th Cir.2020)………………….……………..…………10

*Laster v. City of Kalamazoo,* 746 F.3d 714 (6th Cir.2014)………………………….……………9

*Mariani-Colon v. Dep't. of Homeland Security ex rel. Chertoff,* 511 F.3d 216 (1st Cir. 2007)…..19

*Morrissey v. Laurel Health Care Co.*, 943 F.3d 1032 (6th Cir.2019)……………………………..9

*O'Donnell v. Univ. Hosps. Cleveland Med. Ctr.*, 833 F. App'x 605 (6th Cir. 2020)……..………12

*Ross v. Am. Red Cross*, 567 F. App'x 296 (6th Cir. 2014)………………………………..…17

*Singfield v. Akron Metropolitan Housing Authority*, 389 F.3d 555 (6th Cir. 2004)………………19

*Smith v. Midland Brake, Inc.,* 180 F.3d 1154 (10th Cir. 1999)………………………………12, 13

*Stocker v. United States,* 705 F.3d 225 (6th Cir. 2013)…………………………….…………18

*Thompson v. E.I. DuPont deNemours & Co.*, 70 F. App'x 332 (6th Cir. 2003)…………………10

*White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472 (6th Cir. 2010)………….…………9

*Wright v. Murray Guard, Inc.*, 455 F.3d 702 (6th Cir. 2006)……………………………………16

*Cook v. FRB of Cleveland,* No. 1:18cv83, 2019 U.S. Dist. LEXIS 100850 (S.D. Ohio June 17, 2019)……………………………………………………………………………………………..10

*Eustace v. Springfield Pub. Sch.*, 463 F. Supp. 3d 87 (D. Mass. 2020)…………………………13

*Express Energy Servs. Operating, L.P. v. Hall Drilling, LLC,* No. 2:14-cv-204, 2015 U.S. Dist. LEXIS 16277 (S.D. Ohio Feb. 10, 2015)……………………………………………………..17, 18

*Flynn v. Mid-Atlantic Mari-Time Academy*, E.D.Va. No. 2:18-cv-502, 2019 U.S. Dist. LEXIS 225062, at *21 (July 30, 2019)……………………………………………….………………10

*Garibay v. Hamilton Cty.*, 496 F. Supp. 3d 1140 (E.D.Tenn.2020)……………………..…….…10

*Mercedes v. Clark Cty.,* No. 2:04-cv-0188-LDG-GWF, 2006 U.S. Dist. LEXIS 114845 (D. Nev. Sep. 29, 2006)……………………………………………………………………………………19

*Ransom v. Ariz. Bd. of Regents*, 983 F. Supp. 895 (D. Ariz. 1997)……………………….……13, 14

*Siwik v. Cleveland Clinic Found.,* No. 1:17CV1063, 2019 U.S. Dist. LEXIS 34987 (N.D. Ohio Mar. 5, 2019)……………………………………………………………………….……………16

*Speer v. UCOR, LLC,* No. 3:21-cv-368, 2022 U.S. Dist. LEXIS 157271 (E.D. Tenn. Aug. 31, 2022)…………………………………………………….…..…..……15

*Wood v. Cty. of Alameda*, NO. C 94 1557 TEH, 1995 U.S. Dist. LEXIS 17514 (N.D. Cal. Nov. 17, 1995)………………………………………………………………………………....…….…...13

**Rules and Statutes**

Federal Rule of Civil Procedure 56(c)………………………………..…………….…………13

42 U.S.C.S. § 12111………………………………………………..…………………………1, 14

**Other Sources**

H.R. Rep. No. 101-485(II), at 63 (1990), reprinted in 1990 U.S.C.C.A.N. 303, 345…………....12

## I.   STATEMENT OF ISSUE TO BE DECIDED

The Americans with Disabilities Act requires employers to provide reasonable accommodations to disabled employees and lists "reassignment to a vacant position" as an example of a "reasonable accommodation." 42 U.S.C.S. 12111(9)(b). A disabled employee of Defendant formally requested to be transferred to a vacant position for which she was qualified as an accommodation. Her healthcare providers certified that she was disabled and needed to be transferred as an accommodation. The issue before this Court is whether Defendant failed to accommodate the employee when it denied the request and required her to remain on indefinite, unpaid leave instead, and retaliated against her when she complained.

## II.  SUMMARY OF ARGUMENT

A disabled employee who requires a transfer to a different position as an accommodation must establish that there was a vacant position for which the employee was qualified. An employer need not violate a bona-fide seniority system or collective-bargaining agreement to accommodate the disabled employee. But where transferring the disabled employee does not affect the rights of any other employee or cause undue hardship to the employer, the ADA requires the employer to transfer the employee if no other accommodation would allow the employee to continue to work. The evidence in this case proves that Defendant violated Torres' rights under the ADA, and retaliated against her when she complained.

## III.   STATEMENT OF FACTS

### A.  Torres is disabled.

Yazmin Torres, PhD is a physical therapist. (Ex. A, Torres Affid. dated Dec. 5, 2016, ¶1). She has a history post-traumatic stress disorder ("PTSD") dating back to 2006, when she

experienced the death of her unborn son at 32 weeks gestation. (Torres p. 51, 53, 55). Until she

miscarried ten years later, she did not require workplace any accommodations. (Torres p. 53).

On February 10, 2016, Torres learned she had suffered a miscarriage and "all the

underlying grief" from the death of her child came back. (Torres p. 53). She immediately felt she

was "spiraling… out of control." (Torres p. 60, 70, 76-77). Her mental health rapidly

deteriorated and she began experiencing debilitating panic attacks. (Torres p. 54, 60). In the

following months, she remained on medical leave from UH. (Torres p. 53). Despite medication

and weekly therapy appointments, she felt completely unable to function. (Torres p. 53;

Edgehouse p. 43-44).

> **B. Torres complies with UH policy to request an accommodation; she promptly provides medical documentation upon request by UH.**

The day after Torres learned about the miscarriage, a colleague told her that a coworker

was spreading false rumors about why she was out. (Torres p. 60, 66). Already in a mental health

spiral, Torres felt unable to cope with more stress. (Torres p. 76-77). She called her supervisor,

Nate Tekavec, and told him all about losing her son in 2006, her mental health history, her

miscarriage, the rumors, and that she felt she needed to transfer to another location the sake of

her health. (Torres p. 60, 70). Torres' conversation with Tekavec should have triggered

Defendant's accommodation process. (Edgehouse p. 52-53). He should have reported her request

to HR so they could send Torres requests for medical certification. (Edgehouse p. 52-53). But

Tekavec failed to tell HR and instead told Torres he could not transfer her. (Ex. A, ¶8, Tekavec

p. 44). Torres immediately began applying for open physical therapist positions at UH. (*Id.*). She

also requested medical leave. (Edgehouse Ex. 7).

Torres' healthcare provider initially indicated that with treatment, Torres would be able

to return to work at the JCC on March 10, 2016. (Edgehouse p. 47). But Torres continued to

experience debilitating panic attacks so her leave was extended. (Edgehouse Ex. 11, 14, 16). It was apparent to Torres and her healthcare provider that the physical location of the JCC was a trigger for her PTSD. (Torres p. 88-89). Just the sight of the building from the highway caused Torres heightened anxiety, and every time she thought about returning to work, she had a panic attack. (Torres p. 57. 89-90). Several times, she got into the car to drive to the JCC and broke down crying in the car. (Torres 89).

Torres continued to ask for a transfer as an accommodation. (Torres Affid., Dec. 5, 2016). She asked Tecavec to transfer her at least twice in February, and then on May 13, 2016, she told Lisa Edgehouse, a registered nurse employed by UH to process employees' requests for medical accommodations, that she had requested an accommodation but had not received any ADA paperwork. (*Id.*, Edgehouse p. 62, 64). The next day, Torres repeated her request to Valerie Jaggie, an HR manager. (Jaggie p. 77). UH first requested medical certification for Torres' request for accommodation on May 16, 2016, and Torres remained on leave during that time. (Edgehouse Ex. 17).

On June 2 and again on June 13, Torres' healthcare provider sent Edgehouse written certification that Torres needed a transfer to a new location as an accommodation because of her panic attacks. (Torres p. 86, 88, Edgehouse Ex. 16, 17, 18, p. 96-97, 109-110). Edgehouse, who had processed Torres' medical leave, was already aware of Torres' miscarriage and that she was treating for PTSD. (Edgehouse p. 43-44). As a registered nurse, Edgehouse knew that PTSD is a serious psychological condition. (Edgehouse p. 44). Edgehouse testified that Torres and her healthcare providers submitted all the documentation asked of them and it established the Torres had a disability and needed accommodation. (Edgehouse p. 113-114).

### C. Defendant denies Torres' request for accommodation.

Edgehouse had authority to approve employee leave requests, but not job accommodations. (Edgehouse p. 16). Her job was to review the medical information and relay only the restrictions to the employee's supervisor and HR generalist. (Edgehouse p. 16). She was supposed to do that "without any explanation about what the medical condition was" and they would then determine "whether or not to accommodate the employee." (Edgehouse p. 17, 53, 83, Jaggie p. 12-13). In Torres' case, the HR generalist was Valerie Jaggie. (Edgehouse p. 87-78, Jaggie p. 10).

On June 2, 2016, Edgehouse informed Tekavec and Jaggie that Torres' medical provider certified that Torres be granted a change of work location as an accommodation of her serious health condition. (Edgehouse p. 79, 99-100, Ex. 19). But Jaggie and Tekavec simply denied Torres' request for accommodation. On June 29, 2016, Jaggie wrote to Torres that UH was "unable to provide you with a reasonable accommodation at this time because there is no specific accommodation per the provider and no indication that you cannot perform the essential functions of your job at current work assignment." (Edgehouse p. 106). Edgehouse concedes that statement is untrue. (Edgehouse p. 106-108). Edgehouse has no idea why Torres' request was denied. (Edgehouse p. 104).

Two weeks later, UH notified Torres that if she didn't provide documentation to support her need for absence she would be terminated for "job abandonment." (Edgehouse Ex. 29). Torres responded that she had provided medical documentation certifying that she needed a transfer as an accommodation. (Edgehouse Ex. 30). She invited Defendant to speak directly with her healthcare providers if they needed additional information. (Edgehouse Ex. 30). Instead of

transferring her, Defendant instructed her to remain on unpaid leave until she could return to the JCC. (Jaggie p. 22).

### D.  Accommodating Torres does not cause undue hardship.

Defendant refused to accommodate Torres simply because accommodating her didn't benefit Defendant, whose practice is to deny any accommodations that do not meet Defendant's "business need." (Jaggie p. 90). Defendant had open positions that Torres was qualified to fill; she applied for those positions; and Defendant refused to move her into any of them. (Middleton p. 44, Ex. 1). Defendant transfers healthcare providers like Torres only when it benefits Defendant, to cover the work when employees are on leave. (Jaggie p. 46-47, 70-71, 73). Jaggie admitted that Defendant does not transfer disabled employees as an accommodation "under any circumstances." (Jaggie p. 45-46, 67).

Transferring employees causes no hardship to Defendant. (Jaggie p. 73). Transferring Torres would not have affected any of Defendant's other employees' rights, since there was no collective bargaining agreement, seniority system or bumping process involved. (Jaggie p. 47). In fact, none of Defendant's other employees would have been affected at all—Defendant hired an external candidate for at least four of those positions. (Middleton p. 53, Ex. 1). The only explanation offered for Defendant's decision to deny Torres' accommodation came from Jaggie, who testified that she and Tekavec simply looked at their past practice, concluded that they had never transferred anyone as an accommodation, and denied Torres' request.  (Jaggie p. 125).

### E.       Defendant retaliates against Torres.

#### 1.  Torres engages in protected activity by making internal complaints that her ADA rights were violated

On February 26, 2016, in a telephone conference with Tekavec and David Amato, an employee relations specialist, Torres complained that Tecavec failed to accommodate her when

she asked to be transferred. (Ex. A, ¶8, Jaggie p. 79-80).  Torres complained to Jaggie in May, June and July that Tekavec and Amato violated her rights under the ADA because they didn't accommodate her. (Jaggie p. 16, 22, 78, Ex. 2, 6, Edgehouse Ex. 1, Bolek Dec. Ex. 4). In July, Torres told Jaggie she spoke to an attorney about her ADA rights and was considering litigation. (*Id.*). Jaggie admits she never counseled Amato or Tekavec not to retaliate against Torres. (Jaggie p. 103-104).

### 2.  Defendant retaliates against Torres because of her internal complaints.

Tekavec, Amato and Jaggie were all aware that Torres engaged in protected activity. Jaggie and Tekavec decided to deny Torres' request for accommodation. (Jaggie p. 18, 66). And Amato actively interfered in Torres' efforts to secure another position at UH. (Middleton p. 63).

Christine Middleton was employed by Defendant as an internal recruiter. (Middleton p. 83, 86). When an employee applies for a transfer to another position, a recruiter acts as a "gatekeeper by first evaluating whether the employee meets the objective qualifications for the position. (Jaggie p. 49). If they do, then the recruiter interviews the employee. (Jaggie p. 49). If the recruiter determines that the employee is qualified, the recruiter arranges for the hiring manager to interview the employee. (Jaggie p. 49). Because the hiring managers only interview qualified candidates, their interview is purely subjective. (Jaggie p. 49-50).

On August 11, 2016, Torres submitted her tenth application, for an open physical therapist position, since requesting an accommodation. (Middleton Ex. 1). Middleton had previously interviewed Torres twice, and believed Torres was qualified, professional, appropriate, and presented well. (Middleton p. 68, Ex. 1). Middleton interviewed Torres on August 16, 2016 and determined that Torres was qualified for that position and recommended her to the hiring manager, Deborah Pryor. (Middleton p. 68, Bolek Dec. Ex. 5).

Torres applied for this position just weeks after she complained to Jaggie that Amato had violated her rights under the ADA and said she was consulting an attorney. Around the same time Torres applied, Amato contacted Middleton, told her that Torres had asserted a legal claim against UH, and asked who the hiring manager was for the position Torres applied for. (Middleton p. 60, 62-63, 65).  Torres was not selected for the position. (Middleton Ex. 1).

Middleton claims that Torres was not selected because she was late for the interview with the hiring manager. (Middleton p. 26). That is untrue. Torres was not late for any interview at UH. (Torres Dec.). Middleton claims the hiring manager documented that Torres was late in her notes, along with other negative feedback. (*Id.*). But there is nothing in the hiring manager's notes suggesting that Torres was late or that Torres was otherwise not qualified for the position. (Bolek Dec. Ex. 5). The hiring manager merely notes that she does not feel Torres was "the best fit" for the position. (*Id.*).

From that time through the end of 2017, Torres applied for more than forty positions at UH. (Middleton Ex. 1). Each time, Amato contacted Middleton, told her Torres submitted another application and asked who the hiring manager was for that position. (Middleton p. 62).[1] Out of the forty positions Torres applied for, she was interviewed by the recruiter three times; there were many positions she was qualified for where she was not even granted the preliminary phone interview.[2] (Middleton Ex. 1). Jaggie conceded Amato's conduct "may appear" to have been "harmful" to Torres. (Jaggie p. 26, 27).

Middleton testified that documents relevant to Torres' applications existed, but those documents were not produced in discovery. Middleton testified that negative feedback about

---

[1] That continued until Amato left UH's employ. (*Id.*).

[2] The evidence supports an inference that Amato also contacted the hiring managers, because some of them revealed to Torres that they knew she was on medical leave. (Torres 97).

Torres was preserved in "notes" prepared contemporaneously by UH managers. (Middleton p. 25, 26, 41, 69). She explained that the notes were maintained in UH computer system named "Taleo." (Middleton p. 73). She also testified that she kept some notes about her interactions with Torres that she preserved due to a "directive" from the UH legal department (Middleton p. 72). Middleton resigned from UH on April 4, 2022, while this case was pending. (Middleton p. 72). She testified that she gave the folder with her notes to her manager at UH that day. (Middleton p. 72). Prior to that time, no one at UH had ever asked her for them. (Middleton p. 72). Neither the hiring managers feedback nor Middleton's notes have been produced. (Bolek Dec.).

After Middleton's deposition, Plaintiff's counsel wrote to Defense counsel and asked for the missing notes, pointing out that the Court had previously ordered Defendants to produce all such documents. (*Id.*). Defense counsel responded, "we are still looking for Middleton's file and will produce it once it is located. The supplementation as to the other question (counsel's request for the Taleo file) is attached." (Bolek Dec., Ex. 2). None of the attached documents contained "negative feedback" about Torres. (Bolek Dec., Ex. 3).

### 3. Defendant retaliates against Torres because she filed a charge with the EEOC.

On December 5, 2016, Torres was finally offered a position—part time—with Defendant's facility, St. John Medical Center. (Ex. B, ¶6). The hiring manager told Torres that she would place her on the schedule after Torres attended orientation on January 10 and 12, 2017. (*Id.* ¶7). The EEOC sent Defendant a notice of Torres' charge of discrimination on December 7, 2017. (Notice of Charge, Ex. C). Torres attended orientation but was never placed on the schedule. (Ex. B, ¶9, ¶10).

…

8

## I.    LAW AND ARGUMENT

### A.  Standard of Review

Summary judgment may be granted only if the evidence shows "that there is no genuine

issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(c)(2).  "In deciding whether this burden has been met by the movant, this court

views the evidence in the light most favorable to the nonmoving party."  *White v. Wyndham*

*Vacation Ownership, Inc.*, 617 F.3d 472, 476 (6th Cir. 2010) (*citing Matsushita Elec. Indus. Co.*

*v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  "A genuine issue of material fact exists when

'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that

party.'"  *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir.2014) (*quoting Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  In deciding Defendants' motion, the Court

"must accept Plaintiff's evidence as true and draw all reasonable inferences in his favor."  *Id.*

### B.  The evidence establishes that Defendant failed to accommodate Torres.

The ADA prohibits discrimination against disabled employees and defines discrimination as

including failure to reasonably accommodate disabled employees. *Aka v. Wash. Hosp. Ctr.*, 156

F.3d 1284, 1300 (D.C. Cir. 1998). To overcome summary judgment on the claim of failure to

accommodate under the ADA, Plaintiff must present evidence that (1) Torres is disabled, and (2)

she is otherwise qualified for her position with a proposed reasonable accommodation. *Morrissey*

*v. Laurel Health Care Co.*, 943 F.3d 1032, 1038 (6th Cir.2019). When the proposed

accommodation is a transfer, a plaintiff establishes a prima facie case by showing that she

"requested, and was denied, reassignment to a position for which [s]he was otherwise qualified."

*Burns v. Coca-Cola Ents.*, 222 F.3d 247, 258-259 (6th Cir.2000) (explaining that "such

employees may not recover unless they propose, or apply for, particular alternative positions for

9

which they are qualified." *Id*.).  *See, also, Thompson v. E.I. DuPont deNemours & Co.*, 70 F. App'x 332, 336 (6th Cir. 2003) ("If an employee is unable to perform his previous job, with or without accommodation, then he must show that he requested, and was denied, reassignment to a position for which he was otherwise qualified.").

### 1. Torres is disabled.

Edgehouse's testimony is sufficient to establish that Torres had a medical impairment—PTSD. Courts have recognized that "PTSD can qualify as a disability under the first ADA definition when the plaintiff presented some evidence that the PTSD substantially interfered with a major life activity other than work." *Garibay v. Hamilton Cty.*, 496 F. Supp. 3d 1140, 1147 (E.D.Tenn.2020), citing *Kurtzhals v. Cty. of Dunn*, 969 F.3d 725, 729 (7th Cir.2020) (recognizing PTSD as a disability) and *Flynn v. Mid-Atlantic Mari-Time Academy*, E.D.Va. No. 2:18-cv-502, 2019 U.S. Dist. LEXIS 225062, at *21 (July 30, 2019) ("PTSD can constitute a disability under the ADA."). Torres testified that when her PTSD is triggered, it substantially limits the major life activities of "working, thinking, concentrating, caring for [her]self, and interacting with others." (Ex. A, ¶2). This unrefuted evidence proves that Torres' impairment, PTSD, is a disability within the meaning of the ADA. "Relevant in this case, the ADA provides that 'an impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active.' 42 U.S.C. § 12102(4)(D)." *Cook v. FRB of Cleveland*, No. 1:18cv83, 2019 U.S. Dist. LEXIS 100850, at *14 (S.D. Ohio June 17, 2019). Defendant's argument that Torres merely experienced "workplace stress" which does not rise to the level of a disability, or that because she had not previously required accommodations she wasn't entitled to be accommodated when she needed to be is contrary to the law and well-developed record in this case.

### 2. Torres is otherwise qualified for her position with a reasonable accommodation.

There is no dispute that Torres was qualified for the position of physical therapist. Middleton testified that Torres was qualified for the open physical therapist positions she applied for. And Torres' health care professionals certified that Torres was able to return to work as a physical therapist on July 1, 2016 at any location other than the JCC.

### 3. Torres requested a transfer to an available position for which she was qualified as an accommodation.

Torres told her supervisor in February that she suffered from PTSD and needed a transfer because of her health. Defendants' suggestion that Torres' request for accommodation was somehow insufficient because it came from Torres, rather than her healthcare provider, is unsupported by the law.  An employee's "own requests, whether written or oral" satisfy the requirement to request accommodation, and medical documentation is not required. *King v. Steward Trumbull Mem'l Hosp., Inc.*, 30 F.4th 551, 564 (6th Cir. 2022). But even if that request did not satisfy Torres' obligation, there is not dispute that Torres told Edgehouse and Jaggie that she needed a transfer as an accommodation for her disability on May 13 and 14, 2016, respectively, and Torres' healthcare providers made a formal request, on Defendant's ADA forms, for Torres to be transferred as an accommodation of her disability on June 2, 2016. Torres followed UH's policies and identified and applied for open positions for which she was qualified.

### 4. Defendant failed to accommodate Torres.

Torres first requested accommodation in February but Defendant did not request medical certification until May. Even when they had the certification, Defendants failed to engage in the interactive process. Rather, Defendant summarily denied Torres' request. Defendant instructed

11

Torres to remain on unpaid leave until she could return to her position at the JCC, knowing that her healthcare provider certified that she would never be able to return to that location. Under those circumstances, leave was not a reasonable accommodation because it did not prevent Torres from being out of work. As the legislative history of the ADA explains: "If an employee, because of disability, can no longer perform the essential functions of the job that she or he has held, a transfer to another vacant job for which the person is qualified may prevent the employee from being out of work and [the] employer from losing a valuable worker." *Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1161-62 (10th Cir. 1999), *citing* H.R. Rep. No. 101-485(II), at 63 (1990), reprinted in 1990 U.S.C.C.A.N. 303, 345. Indeed, the Sixth Circuit recognized that placing a disabled employee on involuntary unpaid leave of absence when the employee will never be able to return to their position is not an accommodation, but rather a constructive discharge. *O'Donnell v. Univ. Hosps. Cleveland Med. Ctr.*, 833 F. App'x 605, 618 (6th Cir. 2020). That is exactly what Defendant has done.

Defendant's alleged "policy" of not transferring employees provides no defense under the ADA. The Sixth Circuit has noted that employers cannot avoid transferring disabled employees as an accommodation "simply by adopting a no transfer policy" where such a policy demonstrates "unreasonable inflexibility in the face of a demand for reasonable adjustments to accommodate a disabled candidate for transfer." *Burns,* 222 F.3d at 258-259 (recognizing that "numerous courts have assumed that the reassignment obligation means something more than treating a disabled employee like any other job applicant.").

Defendant contends that the ADA does not obligate employers to give disabled employees any preferential consideration. The United States Supreme Court has expressly rejected that argument:

> Preferences will sometimes prove necessary to achieve the Act's basic equal opportunity goal. The Act requires preferences in the form of 'reasonable accommodations' that are needed for those with disabilities to obtain the same workplace opportunities that those without disabilities automatically enjoy. By definition any special 'accommodation' requires the employer to treat an employee with a disability differently, i.e., preferentially. And the fact that the difference in treatment violates an employer's disability-neutral rule cannot by itself place the accommodation beyond the Act's potential reach.

*US Airways, Inc. v. Barnett*, 535 U.S. 391, 397, 122 S. Ct. 1516, 1521 (2002) (holding that transfer that violates a seniority system is not reasonable). Courts have also rejected the claim that merely allowing a disabled employee to apply for a position is a reasonable accommodation. "[T]he ADA defines the term 'reasonable accommodation' to include 'reassignment to a vacant position.' The statute does not say 'consideration of a reassignment to a vacant position.' Moreover, 'reassignment' must mean something more than the mere opportunity to apply for a job with the rest of the world." *Smith*, 180 F.3d at 1164, *citing Aka*, 156 F.3d at 1302 (the word "reassign must mean more than allowing an employee to apply for a job on the same basis as anyone else."). *See, also, Ransom v. Ariz. Bd. of Regents*, 983 F. Supp. 895, 902 (D. Ariz. 1997) (rejecting the employer's claim "that disabled employees are entitled to reassignment accommodations under the ADA only in the same way as an employer provides for reassignment of nondisabled, employees."); Wood *v. Cty. of Alameda*, NO. C 94 1557 TEH, 1995 U.S. Dist. LEXIS 17514, at *40 (N.D. Cal. Nov. 17, 1995) ("Allowing the plaintiff to compete for jobs open to the public is no accommodation at all."); *Eustace v. Springfield Pub. Sch.*, 463 F. Supp. 3d 87, 104 (D. Mass. 2020) ("an employer cannot rely merely on the fact that it has a disability-neutral, competitive process in place, and that a disabled employee is allowed to participate in that process," to justify its refusal to transfer a disabled employee).

Jaggie testified that Tekavec had the authority to transfer Torres if he chose to do so, and both Jaggie and Tekavec admitted that Defendant did transfer employees when Defendant chose

13

to do so. Defendant's failure to even consider modifying its practice to accommodate Torres violates the ADA's mandate to "alter existing policies or procedures," which one court described as "the essence of reasonable accommodation." *Ransom*, 983 F. Supp. at 902.

Finally, Defendant's argument that Torres requested a transfer away from her supervisor or certain coworkers is false and directly contradicted by Torres' medical certifications.

### 5. There is no competent evidence that transferring Torres would have imposed an undue hardship on Defendant.

Once a plaintiff has established a prima facie case of failure to accommodate, as Plaintiff has in this case, "the employer 'bear[s] the burden of proving that . . . a proposed accommodation will impose an undue hardship upon the employer. *Burns,* 222 F.3d at 258-259. Defendant cannot carry that burden. The ADA defines "undue hardship" as "an action requiring significant difficulty or expense, when considered in light of:"

    i) the nature and cost of the accommodation needed under this Act;

    ii) the overall financial resources of the facility or facilities involved in the provision of the reasonable accommodation; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such accommodation upon the operation of the facility;

    iii) the overall financial resources of the covered entity; the overall size of the business of a covered entity with respect to the number of its employees; the number, type, and location of its facilities; and

    iv) the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; the geographic separateness, administrative, or fiscal relationship of the facility or facilities in question to the covered entity.

42 U.S.C.S. § 12111(10).

The evidence proves that transferring Torres would not have caused any difficulty or expense to Defendant, let alone a "significant" one. Defendant transfers employees when it suits Defendant's needs. Defendant had vacant positions for which Torres was qualified and applied.

She had been employed by Defendant for years. It is non-sensical for Defendant to claim that transferring Torres to an available position caused more difficulty or expense to Defendant than hiring a new employee for that position.

The law does not allow a defendant to avoid transferring a disabled employee as an accommodation merely by claiming another applicant was preferred. Rather, the Sixth Circuit has recognized only that "reassignment is not required if it would violate other employees' rights under a seniority system or collective bargaining agreement. *Burns,* 222 F.3d at 258-259. A "best qualified selection policy" is not the same as a seniority system. *EEOC v. United Airlines, Inc.*, 693 F.3d 760, 760 (7th Cir. 2012). Moreover, unlike in the cases cited by Defendant, UH has not presented *any evidence* that the individuals selected over Torres were "better qualified," only that they were better liked based on purely subjective evaluations of their personality.[3]

Finally, any claim that Defendant could not have transferred Torres because Defendant would have to allow all of its employees to transfer if they requested it is without merit. An employer may not avoid accommodating a disabled employee because it does not offer that same accommodation to all of its employees. Accommodations are determined on a "case-by-case basis; what may be a reasonable accommodation for one employee may not be reasonable for another." *Speer v. UCOR, LLC*, No. 3:21-cv-368, 2022 U.S. Dist. LEXIS 157271, at *20 (E.D. Tenn. Aug. 31, 2022).

### C.  Defendant retaliated against Torres.

Torres established a prima facie case of retaliation with evidence that: (1) she engaged in protected activity; (2) the exercise of her protected activity was known to Defendant; (3) an

---

[3] See, for example, the hiring managers notes for the position Torres applied for in August 2016, stating only that Torres was not "the best fit" for the opening. (Bolek Dec. Ex. 5).

adverse employment action was taken against her; and (4) there was a causal connection between the protected activity and the adverse employment action. *Garner v. Cuyahoga Cnty. Juvenile Court*, 554 F.3d 624, 639 (6th Cir. 2009); *Fuhr v. Hazel Park Sch. Dist.*, 710 F.3d 668, 674, (6th Cir. 2013).

Torres engaged in protected activity when she made repeated internal complaints, first during a telephone call with Amato and Tekavec, then in several communications to Jaggie, that UH had violated her rights under the ADA. There is no dispute that Amato, Tekavec and Jaggie knew about her protected activity because she made her complaints to them. Defendant took adverse action against Torres. Tekavec and Jaggie refused to transfer Torres knowing she could not return to her position at the JCC, constructively discharging her. Amato interfered with her efforts to transfer by telling Middleton that Torres had asserted a legal claim against UH.

The evidence establishes a causal connection between Defendants' retaliatory conduct and the adverse action. The ultimate question for the Court is "whether [Plaintiff] has presented evidence, direct or circumstantial, from which a reasonable jury could logically infer that [Torres' protected activity] was a motivating factor in [the decision not to select her for an open position]." *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 713 (6th Cir. 2006). Plaintiff has presented such evidence. Middleton was a gatekeeper to Torres' continued employment, and after Amato told her that Torres asserted a legal claim, Torres was turned down for a position she was qualified for, and Middleton refused to interview Torres for other positions she was qualified for. *See, e.g. Siwik v. Cleveland Clinic Found.*, No. 1:17CV1063, 2019 U.S. Dist. LEXIS 34987, at *55 (N.D. Ohio Mar. 5, 2019). In that case, the Court denied summary judgment on plaintiff's retaliation claim, finding that evidence that a prospective employer

refused to hire plaintiff after defendant told the prospective employer that the plaintiff brought a lawsuit against defendant was sufficient to allow a jury to hear the claim.

Plaintiff is further entitled to an adverse inference on her retaliation claim because Defendant failed to preserve and/or produce relevant evidence, the hiring managers' contemporaneous notes of their interviews with Torres and Middleton's notes of her interactions with Torres. An adverse inference "is appropriate if the Defendants knew the evidence was relevant to some issue at trial and . . . [their culpable] conduct resulted in its loss or destruction." *Express Energy Servs. Operating, L.P. v. Hall Drilling, LLC*, No. 2:14-cv-204, 2015 U.S. Dist. LEXIS 16277, at *5 (S.D. Ohio Feb. 10, 2015), *quoting Ross v. Am. Red Cross*, 567 F. App'x 296, 302 (6th Cir. 2014) (*quoting Beaven v. U.S. Dep't of Justice*, 622 F.3d 540, 553 (6th Cir. 2010)).

To justify an adverse inference, Plaintiff must show that (1) Defendant had control over the evidence and an obligation to preserve it at the time it was lost or destroyed; (2) the evidence was lost or destroyed with a "culpable state of mind;" and (3) the lost or destroyed evidence was relevant to Plaintiff's claim or a defense such that a reasonable trier of fact could find that it would support that claim or defense. *Express Energy Servs. Operating, L.P.,* 2015 U.S. Dist. LEXIS 16277, at *5 (*quoting Beaven*, 622 F.3d at 553).

There can be no dispute that Defendant had control over the hiring managers' notes and an obligation to preserve them at the time they were created. Torres complained to Amato and Jaggie in UH human resources that she felt UH was violating her rights under the ADA beginning in February 2016. In June 2016 she told Jaggie that she was consulting a lawyer about UH's failure to accommodate her. (Jaggie Ex. 6). Thus, UH was under an obligation to preserve the hiring manager's notes beginning, at the latest, in June 2016. *See, John B. v. Goetz*, 531 F.3d

448, 459 (6th Cir. 2008) ("[I]t is beyond question that a party to civil litigation has a duty to preserve relevant information, . . . when that party has notice that the evidence is relevant to litigation or . . . should have known that the evidence may be relevant to future litigation." (internal quotations omitted)). Moreover, Middleton testified that she had possession of her handwritten notes *during discovery in this case*, that she specifically gave them to her manager when she left UH because they were subject to a litigation hold, and UH has not produced them. There is no dispute that UH had possession of them and lost or destroyed them when they had an obligation to preserve them.

The evidence also proves that Defendant lost or destroyed the hiring managers' notes and Middleton's file with "a culpable state of mind." In this context, "a culpable state of mind" is established "by a showing that the evidence was destroyed knowingly, even if without intent to breach a duty to preserve it, or negligently." *Express Energy*, 2015 U.S. Dist. LEXIS 16277, at *5, (*quoting Beaven*, 622 F.3d at 554). *See also Stocker v. United States*, 705 F.3d 225, 235 (6th Cir. 2013) ("negligent conduct may suffice to warrant spoliation sanctions under the appropriate circumstances.").

Finally, the evidence proves that the lost or destroyed evidence was relevant to Plaintiff's claims or the defense. Defendant contends that Torres was not selected for any full time position because Middleton and other recruiters determined she was not qualified for the positions, and the hiring managers gave her negative feedback in contemporaneous records. Those records are unquestionably relevant and the Court may infer, from their loss, that they would support Plaintiff's claims.

Moreover, the temporal proximity between UH learning of Torres' charge of discrimination and UH's decision not to schedule Torres to work at St. John Westshore is also

evidence of a causal connection. *See e.g., Singfield v. Akron Metropolitan Housing Authority*, 389 F.3d 555, 563, (6th Cir. 2004) (evidence that the plaintiff was discharged three months after he engaged in protected activity is sufficient evidence of causal connection); *Mariani-Colon v. Dep't. of Homeland Security ex rel. Chertoff*, 511 F.3d 216 (1st Cir. 2007) (two months between filing a charge of discrimination and discharge is sufficient to satisfy the relatively light burden a prima facie case of retaliation).

Plaintiff has established a prima facie case of retaliation and the evidence shows that Defendant's proffered reasons for the decisions at issue are mere pretext. Defendant claims it did not select Torres for the August position because she was late for the interview, but that claim is contradicted by the evidence. Defendant claims it did not schedule Torres to work at St. John because it did not have work for her. The claim that UH went through the time and expense to hire a physical therapist, but did not have *any* work for that therapist to do, is "unworthy of credence." *See, e.g., Mercedes v. Clark Cty.*, No. 2:04-cv-0188-LDG-GWF, 2006 U.S. Dist. LEXIS 114845, at *5 (D. Nev. Sep. 29, 2006) (pretext may be shown where the "proffered explanation is unworthy of credence.").

## II.    CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment should be denied.

Respectfully submitted,

  /s/ Cathleen Bolek
Cathleen M. Bolek (0059884)
Matthew D. Besser (0078071)
**BOLEK BESSER GLESIUS LLC**
Monarch Centre, Suite 302
5885 Landerbrook Drive
Cleveland, Ohio 44124
T 216.464.3004
cbolek@bolekbesser.com
mbesser@bolekbesser.com

*Counsel for Plaintiff*

20

## <u>Local Rule 7.1(f) Certification and Certificate of Service</u>

Pursuant to Local Rule 7.1(f), I hereby certify that this case is assigned the standard track and this Memorandum in Opposition to Defendant's Motion for Summary Judgment adheres to the page limitation for standard track.

I also hereby certify that on January 27, 2023, a copy of the foregoing was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  Parties may access this filing through the Court's system.

*/s/ Cathleen Bolek*
Cathleen Bolek
Counsel for Plaintiff
