

Monarch Centre Suite 302
5885 Landerbrook Drive
Cleveland, OH 44124

p. 216.464.3004
f. 866.542.0743
bbgohio.com

Cathleen Bolek
cbolek@bolekbesser.com

August 3, 2021

Via Electronic Mail:
Katherine_King@ohnd.uscourts.gov
NLancaster@ohnd.uscourts.gov

Hon. Dan Aaron Polster
Carl B. Stokes United States Court House
801 West Superior Avenue, Courtroom 18B
Cleveland, Ohio 44113-1837

Re:   *Baumgart v. University Hospitals Cleveland Medical Center*
      U.S. Dist. Ct. Case No. 20-cv-00998

Dear Judge Polster:

Plaintiff respectfully summarizes the discovery disputes in this matter pursuant to this Court's Order. Plaintiff certifies that he has made good faith efforts to resolve this dispute with Defendant. Plaintiff's counsel has sent and received more than a dozen emails detailing the issues to and from Defense counsel and participated in two lengthy telephone conferences with Defense counsel, but the parties have reached an impasse.

*Relevant Facts*

This is an action for disability discrimination, failure to accommodate, and retaliation brought on behalf of the Bankruptcy Estate of Yazmin Torres. Defendant has refused to 1) identify who made the employment decisions at issue; 2) produce Ms. Torres' complete personnel file or any information from any personnel files other than Ms. Torres; 4) provide addresses and telephone numbers and dates of employment for witnesses Defendant employs or employed; 5) produce any information about Plaintiff's comparators or the selection process; 6) provide any information about other claims of disability discrimination, failure to accommodate or retaliation made against Defendant; or, 7) confirm it has provided all documents relevant to Defendant's affirmative defense of undue hardship.

Torres is a physical therapist. (Complaint, ¶ 14). In February 2016, she was employed at the UH physical therapy office located in the Jewish Community

Hon. Dan Aaron Polster
August 3, 2021
Page **2** of **8**

Center in Pepper Pike Ohio. (Complaint ¶¶ 15-16). She had a history of depression, panic attacks and PTSD, but with treatment, her disabilities were well controlled. (Complaint ¶¶ 18-19). In February 2016, she experienced a miscarriage and was granted, a short leave from work. (Complaint ¶ 20). Not only was the miscarriage traumatic for her, but while she was on leave Ms. Torres also learned from a co-worker that other employees at the JCC were gossiping about whether she was pregnant and why she was on leave, suggesting her supervisor disclosed her confidential medical information. (Complaint ¶ 22). All of the stress combined to exacerbate Torres' disabling conditions and when it was time to return to work, she became extremely dysregulated, so her healthcare provider extended her medical leave. (Complaint ¶¶ 24-25). Torres felt, and her counselor agreed, that a transfer to a different location would likely enable Torres to make a clean start back to work without triggering her anxiety and causing panic attacks. (Complaint ¶¶ 26-27). Torres simultaneously applied for open positions at UH and communicated to her supervisor that she was requesting a transfer because of a medical condition. Specifically, she texted him that she "wanted/needed" to be transferred for the sake of her "physical and mental wellbeing and health." (Complaint ¶ 28). It is unclear what, if anything, Torres' supervisor did in response to that text. UH did not transfer Torres and she was not offered the position for which she applied. (Complaint ¶ 29).

Over the next six months, Torres remained on unpaid leave, experiencing severe emotional distress, while she and her healthcare provider and later, her lawyer, tried to persuade UH to accommodate her. (Complaint ¶¶ 30-40). Throughout this period, Torres applied for virtually every, if not every, physical therapy position at any UH facility but she was not selected for a single position despite her long work history with UH. (Complaint ¶ 39).

In December 2016, Torres was offered a PRN position at UH St. John Medical Center, meaning she would work on an "as needed" basis. (Complaint ¶ 41). She was told she would start work in January 2016, but after UH received notice that she had filed a charge of discrimination with the EEOC, she was told no hours were available. (Complaint ¶¶ 45-51). She was never scheduled to work—not even one shift—in that position.

Ms. Torres filed her first charge of discrimination with the EEOC on December 5, 2016. She alleged that UH failed to accommodate her by refusing to transfer her to a different position, and discriminated against her and retaliated against her by not selecting her for any of the positions she applied for. She filed a second charge relating to the PRN position. After investigating, the EEOC found probable cause that UH had violated Ms. Torres' rights but conciliation failed, the EEOC issued its notice of right to sue and Plaintiff filed this action. (Complaint ¶ 10).

Hon. Dan Aaron Polster
August 3, 2021
Page **3** of **8**

*Plaintiff's Good Faith Efforts to Resolve This Dispute.*

Defendant served its responses to Plaintiff's discovery on April 1, 2021 (Defendant's Discovery Responses and Initial Disclosures are attached).[1] Counsel have exchanged more than a dozen emails and engaged in two lengthy telephone conferences but have been unable to resolve their dispute.

*Defendant has refused to produce addresses and telephone
numbers for witnesses, despite having this information.*

Virtually all, if not all, of the witnesses in this case are current and former employees of Defendant. Yet Defendant has refused to produce any contact information or dates of employment for any of the witnesses. Defendant did not provide that information in their initial disclosures, or their response to Interrogatory Nos. 5, 8, and 9, all of which requested this information. Civil Rule 26(A)(1) clearly provides that where a party knows a witness' address and telephone number, the party must provide it.

---

[1] Because Plaintiff anticipates that Defendant will accuse Plaintiff of "unilaterally" cancelling Ms. Torres' deposition, Plaintiff submits as follows: The parties initially scheduled Ms. Torres' deposition for March 15, 2021. On March 10, Plaintiff's counsel wrote to Defense counsel to confirm that Defendant would produce the requested documents at least two days in advance of the scheduled deposition. After some back-and-forth, defense counsel admitted he did not have the deposition on his calendar and would not be able to provide any discovery responses that week, and the parties agreed to select a new date, exchange discovery responses prior to the deposition, and to jointly ask the court to continue the scheduled mediation. The deposition was then scheduled for April 5. Prior to the scheduled date, Plaintiff produced over 1200 pages of documents; Defendant produced nothing until April 5, when it produced only 132 pages of documents. Counsel again sent emails back and forth. Both parties agreed to reschedule the deposition and Defense counsel agreed to supplement Defendant's production. On June 7, 2021, Defendant supplemented and asked to depose Ms. Torres that following Saturday. Plaintiff's counsel was not available for deposition on such short notice. Also, Defendant's supplemental document production still did not include Ms. Torres' complete personnel file or all of the communications she had with Defendant's employees regarding her requests for accommodation. Plaintiff's counsel has offered to move forward with Ms. Torres' deposition so long as Defense counsel agrees not to ask her questions about matters relating to the documents he withheld, but Defense counsel has refused.

Hon. Dan Aaron Polster
August 3, 2021
Page **4** of **8**

*Defendant has refused to identify the individuals*
*who made the decisions at issue in this case.*

Plaintiff's Interrogatory No. 9 asks Defendant to identify which of its employees made the decisions to 1) hire Ms. Torres; 2) decide whether to interview and hire her for positions she applied for; issue corrective action to her (if applicable); 3) schedule her to work in the PRN position; 4) grant or deny her medical leave and accommodation requests; and, 5) terminate her.[2] In response, Defendant provided only a list of Ms. Torres' supervisors. Plaintiff is entitled to know who made these decisions and to take their depositions to prove her claims that the adverse decisions at issue were discriminatory and/or retaliatory.

*Defendant has refused to produce Ms.Torres' complete personnel file.*

Requests for Production Nos. 3, 4, 5 and 8 ask for Ms. Torres' complete personnel files, including documents and communications that relate to her: work performance; requests for transfer; applications for other positions; requests for leave and accommodation; scheduling as a PRN physical therapist; and, termination. Defense counsel acknowledged in counsel's telephone conferences that Defendant did not produce all of the documents requested, and refused Plaintiff's counsel's invitation to agree not to ask any questions or raise any matters related to the withheld documents, but Defendant refused to agree. If she is going to be questioned about the matters in the withheld documents, Ms. is entitled to review those documents. Furthermore, the withheld documents include prior requests for accommodation by Ms. Torres. If there are documents that tend to show that Defendant had ill-will towards her because of other requests for accommodation, that may be evidence that they discriminated against her when she requested the accommodations at issue. Also, her entire work performance history with UH is relevant to compare to the individuals who were selected for the positions she applied to, because Defendant claims those individuals were better qualified.

---

[2] Defense counsel initially stated he would provide the requested information but only for "adverse actions." When Plaintiff's noted that Plaintiff had asked about "adverse actions," as well as hiring (to avoid any "same actor inference," defense) Defense counsel responded that he would not provide the requested information for the positions Ms. Torres applied for. Plaintiff's counsel stated that if Defendant would stipulate that it would not assert any "same actor" defense, Plaintiff would not need the name of the individual who made the decision to hire Ms. Torres, but Defendant refused to agree.

*Defendant refuses to produce any information from any
personnel file other than that of Ms. Torres.*

Request for Production No. 5 and 18 asks for information from the personnel files of the individuals who made the decisions at issue, and of Plaintiff's comparators—those who were selected over her. Defendant refused to produce any documents in response. Federal Courts have repeatedly recognized that the personnel files of decisionmakers and comparators are discoverable in employment actions. Such documents contain performance, disciplinary and other information that may show bias, motive to be untruthful (to protect their employment) and otherwise reflect on their credibility. *See, e.g., Parrish v. Ford Motor Co.*, 6th Cir. No. 91-5300, 1992 U.S. App. LEXIS 3361, at *18 (Feb. 7, 1992) (reversing district court decision not to allow discovery of comparator's personnel files); *Griffith v. Wal-Mart Stores*, 163 F.R.D. 4, 4 (E.D.Ky.1995) (noting that courts within the Sixth Circuit recognize that personnel files are particularly relevant in discrimination actions); *EEOC v. Avco New Idea Div.*, N.D.Ohio Civil Action No. C 76-315., 1978 U.S. Dist. LEXIS 16901, at *11 (June 29, 1978) (personnel files of supervisors and decisionmakers 'might reasonably be expected to yield probative evidence of plaintiff's claims" and must be produced).

*Defendant refuses to produce job postings for the positions
at issue or any documents related to the decision-making process.*

When Plaintiff requested to be transferred as an accommodation, Defendant told her she had to apply for open positions like any other employee. She did. She was not selected for any positions and was repeatedly told she could return to work at her former location or be terminated. Because Defendant claims she was not qualified for the positions she applied for, or was not as qualified as the selected candidates, Plaintiff requested the job postings to review the required qualifications, and all documents regarding the selection process. Defendant has refused to produce any of these documents. In the Complaint, Plaintiff alleges that Defendant failed to accommodate her when it refused to transfer her, and discriminated against her when it refused to select her for any of the positions she applied for. Documents related to that decision-making process and the job postings are relevant and discoverable.

*Defendant refuses to produce any information about similar claims.*

Interrogatory No. 11 and Request for Production No. 6 ask Defendant to provide documents and information pertaining to other claims of disability discrimination, failure to accommodate and retaliation. The requests are properly limited in time and scope, as they ask about claims for the two years before and after the events at issue and from one department at UH, the disability services

Hon. Dan Aaron Polster
August 3, 2021
Page **6** of **8**

department that handles accommodation requests. Federal Courts recognize that in employment discrimination actions, "(e)vidence of other acts of discrimination is generally discoverable." *Morrison v. Philadelphia Hous. Auth.*, 203 F.R.D. 195, 196 (E.D.Pa.2001). "It is well settled that in a (discrimination) suit, an employer's general practices are relevant even when a plaintiff is asserting an individual claim for disparate treatment." *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1520 (10th Cir.1995); *Saket v. Am. Airlines, Inc.*, N.D.Ill. No. 02 C 3453, 2003 U.S. Dist. LEXIS 2797, at *8 (Feb. 26, 2003) (citing *McDonnell Douglas v. Green*, 411 U.S. 792, 804-05, 93 S. Ct. 1817 (1973), recognizing that "evidence of other acts of discrimination by the defendant may be relevant to establish pretext").

*Defendant asserted the defense of undue hardship, but*
*refused to produce all documents relevant to that defense.*

Request for Production No. 14 asks for documents that show any hardship associated with transferring Torres. Plaintiff requested that Defendant confirm that all responsive documents were produced, but Defendant responded, "(if) Plaintiff believes documents are missing, please provide information to support the position." Plaintiff merely asks that Defendant confirm that all responsive documents were produced, or that Defendant produce responsive documents.

*Plaintiff has fully complied with her discovery obligations.*

Defense counsel has repeatedly indicated to Plaintiff's counsel that he intends to file a motion to compel, even before reviewing Plaintiff's complete production of documents, which total more than 1200 pages.[3] Based on counsel's email exchanges and conversations, it appears that Defendant contends that all of Ms. Torres' personal assets and liabilities and her husband's financial information is discoverable because, Defendant claims, it goes to mitigation and because Defendant intends to challenge the Bankruptcy Court's decision to allow Ms. Torres to discharge debt.[4]

---

[3] After accusing Plaintiff of withholding documents and threatening to file a motion to compel, Defense counsel acknowledged via email that he had not reviewed all of the documents Plaintiff produced.

[4] Defendant has also complained that Plaintiff did not provide a release for Ms. Torres' medical records, but Plaintiff's counsel pointed out that Defendant has a medical release Ms. Torres executed during her employment and in fact, Defendant used that release to access Plaintiff's medical file as recently as April, 2021. Nevertheless, Plaintiff's counsel agreed to provide another release if necessary. Defense counsel also complained that Plaintiff did not provide contact information for witnesses. But, as indicated, all of that information is in Defendant's possession.

Hon. Dan Aaron Polster
August 3, 2021
Page **7** of **8**

      That Ms. Torres sought and received the protection of our bankruptcy courts does not make any fact of consequence to the determination of this action more or less probable. Ms. Torres' bankruptcy proceedings are "plainly irrelevant to the matters presently at issue." *Woolsey v. Luberda*, N.D.Ill. No. 91 C 4490, 1992 U.S. Dist. LEXIS 3147, at *9 (Mar. 13, 1992)(race discrimination in housing case). The Trustee stands in Ms. Torres' shoes in this action and his presence in this case does not make the irrelevant relevant.

      Ms. Torres' personal assets, liabilities, and husband's financial information is also irrelevant. Ms. Torres' duty to mitigate is determined by her "actual actions to mitigate damages." *Garren v. CVS Rx Servs.*, E.D.Tenn. No. 3:17-CV-149, 2021 U.S. Dist. LEXIS 38022, at *19-20 (Mar. 1, 2021). In that case, the Defendant claimed that the plaintiff's assets were relevant to show he did not have a "motive" to mitigate—an argument Defense counsel in this case has also made. But in *Garren,* the court rejected that argument, noting that "it is Plaintiff's actions or lack of actions that are relevant to mitigation of damages. Plaintiff's subjective motivation to mitigate, the other activities on which he may have spent his time, and the assets off of which he might have been living are not of consequence in determining this action…" *Id.* In this case, there is no dispute that Ms. Torres attempted to mitigate as she applied for dozens of positions and repeatedly requested a transfer. The value of her and her husband's assets and any liabilities she may have are of no relevance to this case.

      Ms. Torres' bankruptcy was reviewed and processed by the Trustee and the Bankruptcy Court. It was properly filed and all necessary information was submitted. Even if it were not, however, the legalities of her bankruptcy are irrelevant in this case.

      Plaintiff is merely attempting to obtain the necessary discovery to litigate this action on the merits. He has cooperated fully with Defendant's legitimate discovery efforts. Plaintiff has not attached the voluminous correspondence between counsel regarding the disputes described herein, but if the Court would like to review it to determine whether Plaintiff has made a good faith effort to resolve the disputes described above, it will be promptly submitted.

      Respectfully submitted,

      */s/ Cathleen Bolek*
      Cathleen M. Bolek (0059884)
      Matthew D. Besser (0078071)
      BOLEK BESSER GLESIUS LLC
      Monarch Centre, Suite 302

Hon. Dan Aaron Polster
August 3, 2021
Page **8** of **8**

                                        5885 Landerbrook Drive
                                        Cleveland, Ohio 44124
                                        T 216.464.3004
                                        F 866.542.0743
                                        cbolek@bolekbesser.com
                                        mbesser@bolekbesser.com

                                        Counsel for Plaintiff