# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| SHELDON STEIN, *Chapter 7 Trustee for the Bankruptcy Estate of Yazmin Torres-Duqum* ) ) ) | CASE NO. 1:20-cv-00998 |
| ) | JUDGE DAVID A. RUIZ |
| Plaintiff, ) ) | |
| v. ) ) | |
| ) | **MEMORANDUM OPINION AND ORDER** |
| UNIVERSITY HOSPITALS ) CLEVELAND MEDICAL CENTER, ) ) | |
| Defendant. ) | |

This matter is before the Court upon two separate Motions for Summary Judgment. Plaintiff Sheldon Stein, Chapter 7 Trustee for the Bankruptcy Estate of Yazmin Torres-Duqum, ("Stein") has moved for summary judgment on Count 2 alleging failure to accommodate in violation of the Americans with Disabilities Act (ADA). (R. 44). The second Motion was filed by Defendant University Hospitals Cleveland Medical Center ("University Hospitals" or "UH") who moves for summary judgment on both remaining claims, Counts 2 and 4, which alleges retaliation in violation of the ADA. (R. 45). For the following reasons, Plaintiff's Motion is denied, and Defendant's Motion is GRANTED.

**I. Procedural Background**

Plaintiff Richard A. Baumgart filed this action as a Trustee for the Bankruptcy Estate of Yazmin Torres-Duqum on May 7, 2020; on September 9, 2021, he was replaced as Trustee by Sheldon Stein, the current Plaintiff in this case. (R. 1, R. 24). The Complaint originally alleged four counts against Defendant: 1) Disability Discrimination under the Ohio Revised Code (O.R.C.) Chapter 4112, 2) Disability Discrimination under the ADA, 3) Retaliation under the O.R.C. Chapter 4112, and 4) Retaliation under the ADA. (R. 1). On September 9, 2021, Plaintiff filed a Notice of Dismissal for Counts 1 and 3, which was granted by the Court on September 13, 2021. (R. 25, R. 27). Accordingly, the Motions for Summary Judgment only address the ADA claims, Counts 2 and 4.

Following close of discovery, Plaintiff filed their Motion for partial Summary Judgment, and Defendant filed their Motion for Summary Judgment on all claims. (R. 44; R. 45). Both motions are fully briefed. (R. 53; R. 54).

**II. Factual Background**

While the named Plaintiff in this case is the Trustee for the Bankruptcy Estate of Yazmin Torres-Duqum ("Torres"), the factual allegations involve Torres and her employment at University Hospitals. (*See generally* R. 1). Torres is a licensed physical therapist who began working for University Hospitals in May 2011. (R. 1, PageID# 3). From May 2011 to February 2016, Torres worked at a UH location in a Jewish Community Center ("JCC") in Pepper Pike, OH. (*Id.*, PageID# 3). Until the events at issue in this case, there is no record of previous lawsuits between Torres and UH, and there is no record Torres made UH aware of the disability at issue in this case prior to February 2016. (*See generally* R. 43, Torres Dep.). Torres contends she is disabled because she has post-traumatic stress disorder (PTSD), which causes her to have anxiety

and panic attacks. (R. 1, PageID# 4). There is no mention in the record of PTSD affecting Torres before February 2016, and there is no mention of PTSD affecting Torres at any of her other roles at UH, or in any of the positions she has held since leaving UH in December 2017. (*See generally* R. 43, Torres Dep.).

Torres experienced a miscarriage on February 10, 2016. She requested and was approved for leave under the Family and Medical Leave Act (FMLA). (R. 1, PageID# 4-5 ¶ 20). The next day, February 11, 2016, Torres learned her coworkers were discussing her absence, which caused Torres to request a transfer from her supervisor Nate Tekavec ("Tekavec"). (R. 43, Torres Dep., PageID# 964-965). Later that week, Torres was told by a coworker that other coworkers were talking about her again and discussing the reason for her medical leave. (*Id.*, PageID# 956). Torres then had another conversation with Tekavec and Torres repeated her request for a transfer. (*Id.*, PageID# 958). Tekavec informed Torres she would need to apply through the internal job posting portal, and he communicated Torres' concerns to his supervisor. (*Id.*; R. 42, Tekavec Dep., PageID# 758). Torres began applying to other positions that day. (R. 43, Torres Dep., PageID# 958).

Torres contends that her conversations with Tekavec in February 2016 were intended as an accommodation request under the ADA. (R. 50, PageID# 1293). However, UH asserts it became aware Torres was requesting a transfer as an accommodation on May 4, 2016, after a phone call between Torres and UH human resources representative Valerie Jaggie (Jaggie). (R. 40, Jaggie Dep., PageID# 480–481). Once Jaggie understood Torres was requesting an accommodation, she sent Torres the forms that needed to be filled out by her doctors to request an accommodation under the ADA. (*Id.* at PageID# 486). Torres received the forms on May 13, 2016. (*Id.* at PageID# 485–486).

Torres' physicians completed the paperwork and returned it to UH in the beginning of June 2016. (R. 39, Edgehouse Dep., PageID# 328; R. 45, PageID# 1230). One provider certified that Torres' condition would prevent her from focusing and she needed a change of environment and flexibility in order to perform her job functions. (R. 50, PageID# 1366). Another provider cited that in her present environment she could not function at the high level she used to and listed the necessary accommodation as "an environment of respect and acceptance." (R. 50, PageID# 1363). After considering the request, on June 29, 2016, UH notified Torres that she would not be granted a transfer. (R. 50, PageID# 1295). On July 15, 2016, Torres was notified that she would be terminated for job abandonment if she did not return to work by July 29, 2016. (R. 50, PageID# 1372). After receiving this notice, Torres again requested an accommodation be granted. (*Id.*, PageID# 1373). In response, UH informed Torres that her FMLA was exhausted, and her job would be filled as a business necessity, but UH offered to keep her employee status active so she could have early access to job postings through the internal portal. (*Id.*, PageID# 1374; R. 45, PageID# 1230, 1233). UH claims this was an accommodation offered to Torres in response to her allegedly disabling PTSD and anxiety/panic attacks, that prevented her from working at the JCC. (R. 40, Jaggie Dep., PageID# 517-518; R. 44, PageID# 1058-1059; R. 45, PageID# 1230: R. 50, PageID# 1301).

Having begun to apply for other positions in February 2016, Torres was offered another position within UH in December 2016. (R. 43, Torres Dep., PageID# 958, 992). During that period, the internal hiring process involved Torres working with Christine Middleton (Middleton), a UH recruiter. (R. 41, Middleton Dep., PageID# 596-97). When Torres would apply for a position, the application would be received by Middleton who would conduct an initial phone screening to determine whether Torres' application should be forwarded to the

hiring manager for that position. (*Id.*) This process was standard for all candidates, internal or external, applying to jobs within UH. (*Id.* at PageID# 633).

Torres contends that her internal complaints and accommodations request were shared with Middleton and UH hiring managers, leading to her not being interviewed or not being selected for many of the positions she applied to. (R. 50, PageID# 1307). UH denies these allegations and alleges the delay in Torres finding a new position was the result of Torres not performing well in her interviews. (R. 53, PageID# 1555-56). In December 2016, Torres was hired for a PRN physical therapist position at a different UH clinic, St. John's Medical Center (SJMC). However, Torres claims she was not placed on the schedule after her supervisors were notified that she had filed an Equal Employment Opportunity Commission (EEOC) charge against UH. (R. 50, PageID# 1299). The parties contest whether Torres actually worked at this position, with Torres claiming she did not and UH contending she worked 14.48 hours, which was nearly 3 times more than the other PRN employee at SJMC. (R. 50, PageID# 1299; R. 45, PageID# 1252 ¶12). Defendant contends Torres was not scheduled for more hours at SJMC because she provided very limited availability and turned down multiple shifts offered to her. (R. 45, PageID# 1252 ¶8). Plaintiff has not provided any record of the availability Torres gave to SJMC. Regardless, Torres went on to secure another PRN position with UH in August 2017, where she worked until December 2017 when she chose to take another job. (R. 43, Torres Dep., PageID# 913).

### III. Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *Quinn v. Eshem*, 2016 WL 9709498, at *2 (6th Cir. 2016) ("Summary judgment is proper when, viewing the evidence in the light most favorable to the nonmoving party, there is

5

no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." (internal quotation marks omitted)). There is a genuine dispute as to a material fact when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Peffer v. Stephens*, 880 F.3d 256, 262 (6th Cir. 2018) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247-48.

Non-moving parties may not rest upon the mere allegations in their pleadings nor upon general allegations that issues of fact may exist. *See Bryant v. Commonwealth of Kentucky*, 490 F.2d 1273, 1275 (6th Cir. 1974). In ruling on a motion for summary judgment, the court must construe the evidence, as well as any inferences to be drawn from it, in the light most favorable to the party opposing the motion. *Kraus v. Sobel Corrugated Containers, Inc.*, 915 F.2d 227, 229 (6th Cir. 1990).

## IV. Discussion

### A. Count Two: Failure to Accommodate

The Court considers each party's Motion for Summary Judgment on Count 2 alleging failure to accommodate. In order to establish a prima facie case for failure to accommodate under the ADA, a plaintiff must show that: (1) she is disabled within the meaning of the Act; (2) she is otherwise qualified for the position, with or without reasonable accommodation; (3) her employer knew or had reason to know about her disability; (4) she requested an accommodation; and (5) the employer failed to provide the necessary accommodation. *See Johnson v. Cleveland City Sch. Dist.*, 443 F. App'x 974, 982–83 (6th Cir. 2011). Here, Plaintiff's claim fails on the first element because Plaintiff has failed to show Torres is disabled under the definition required by

the ADA.

The ADA defines "disability" as: (1) "a physical or mental impairment that substantially limits one or more major life activities of such individual," (2) "a record of such an impairment," or (3) "being regarded as having such an impairment." 42 U.S.C. § 12102(1)(A)-(C); *Neely v. Benchmark Fam. Servs.*, 640 F. App'x 429, 432 (6th Cir. 2016). Torres asserts she is disabled under the first definition, claiming "occasionally, in times of increased stress" she has PTSD that substantially limits one or more major life activities. (R. 1, PageID# 4).

Under the first prong of the ADA's definition of "disability," Plaintiff must show not only that Torres was disabled—*i.e.,* suffered "a physical or mental impairment"—but also that such an "impairment substantially limit[ed] one or more major life activities." 42 U.S.C. § 12102(1)(A); *Neely*, 640 F. App'x at 432–33. The Court does not dispute that Torres was limited in one or more major life activities immediately following her miscarriage, and during the time she was initially approved for FMLA. However, the relevant inquiry for this claim is whether Torres was substantially limited in one or more major life activities at the time she requested an accommodation. By the time Torres submitted the required paperwork to UH, the only limitation she asserted was not returning to work at the JCC. (R. 50, PageID# 1363, 1366). Although two providers submitted paperwork on Torres' behalf, neither specified any impairment that limited Torres' major life activities, other than not returning to the JCC specifically. (*Id.*, PageID# 1363, 1366). Therefore, it is clear from the record that "working" at the JCC was the only alleged major life activity that was limited by Torres' asserted disability.

The Sixth Circuit has held in multiple instances that a plaintiff who alleges a disability that impacts the major life activity of "working" must show that the impairment limits their ability to perform a class or broad range of jobs. *Tinsley v. Caterpillar Fin. Servs., Corp.*, No. 18-5303,

7

766 F. App'x 337, 342, 2019 WL 1302189, at *5 (6th Cir. 2019); *Booth v. Nissan N. Am., Inc.*, 927 F.3d 387, 394 (6th Cir. 2019). Although the ADA was amended in 2008 and the definition of what qualifies as a disability was relaxed,

> the EEOC has largely endorsed the pre-Amendments analysis for determining whether a person's claimed impairment sufficiently impacts the major life activity of "working." Specifically, the EEOC's interpretive guide explains that an individual who asserts that she is disabled because she is unable to perform the major life activity of "working" must still show that "the impairment substantially limits ... her ability to perform a class of jobs or broad range of jobs in various classes." 29 C.F.R. § 1630 Appendix. The EEOC further states that "demonstrating a substantial limitation in performing the unique aspects of a single specific job is not sufficient to establish that a person is substantially limited in the major life activity of working." *Id*.

*Tinsley*, 766 F. App'x at 342. This application of the ADA following the 2008 Amendments has been affirmed in multiple other circuits. *Accord Mancini v. City of Providence*, 909 F.3d 32, 42 n.6 (1st Cir. 2018); *Carothers v. County of Cook*, 808 F.3d 1140, 1147 (7th Cir. 2015); *Allen v. SouthCrest Hosp.*, 455 F. App'x 827, 835 (10th Cir. 2011).

Under Sixth Circuit precedent and the EEOC guidelines, Plaintiff has not shown that Torres is disabled as defined by the ADA because they have not offered any evidence to show she is unable to work a broad range of jobs. In fact, the paperwork that Torres submitted to UH, and her deposition testimony demonstrate that she remained capable to work any job that was not located at the JCC. On July 28, 2016, Torres' healthcare provider certified to UH that Torres was cleared to resume working anywhere except the JCC on August 1, 2016, without restrictions or accommodations. (R. 50-1, Torres Aff., PageID# 1314; R. 43, Torres Dep., PageID# 1002). Moreover, during this litigation, Torres was still working full time without restriction or accommodation. (R. 43, Torres Dep., PageID# 898).

It is clear from the record, Torres' issue was at one specific job site, and therefore, there is no

genuine issue of material fact as to whether Torres is disabled as defined by the ADA. Plaintiff cannot meet the first of five required elements to state a claim for failure to accommodate. Accordingly, this Court agrees there is no genuine issue of material fact as to whether Defendant failed to accommodate Torres. Therefore, Defendant's Motion for Summary Judgment on Count 2 is granted.

### B. Count 4: Retaliation in Violation of the ADA.

The Court finds it appropriate to consider the merits of Defendant's Motion for Summary Judgment on Count 4 because a plaintiff may prevail on a disability-retaliation claim "even if the underlying claim of disability fails." *Soileau v. Guilford of Me.*, 105 F.3d 12, 16 (1st Cir. 1997); *accord Cassimy v. Bd. of Educ.*, 461 F.3d 932, 938 (7th Cir. 2006); *Williams v. Philadelphia Hous. Auth. Police Dep't*, 380 F.3d 751, 759 (3rd Cir. 2004) ("Unlike a claim for discrimination under the ADA, an ADA retaliation claim based upon an employee having requested an accommodation does not require that a plaintiff show that he or she is 'disabled' within the meaning of the ADA."); *Heisler v. Metro. Council*, 339 F.3d 622, 630 (8th Cir. 2003); *Bryson v. Regis Corp.*, 498 F.3d 561, 577 (6th Cir. 2007).

To establish a prima facie case of retaliation, a plaintiff must show that "(1) [she] engaged in activity protected under the ADA; (2) the employer knew of that activity; (3) the employer took an adverse action against plaintiff; and (4) there was a causal connection between the protected activity and the adverse action." *Rorrer v. City of Stow*, 743 F.3d 1025, 1046 (6th Cir. 2014) (citing *A.C. ex rel. J.C. v. Shelby Cty. Bd. of Educ.*, 711 F.3d 687, 697 (6th Cir. 2013)); *Morrissey v. Laurel Health Care Co.*, 946 F.3d 292, 304 (6th Cir. 2019).

Plaintiff has established the first element because requests for accommodations are protected acts. *See Bryson v. Regis Corp.*, 498 F.3d 561, 577 (6th Cir. 2007); *accord Baker v. Windsor*

*Republic Doors*, 414 Fed. Appx. 764, 777 n. 8 (6th Cir. 2011) (noting that a "good-faith request for reasonable accommodations" is a "protected act" under the ADA); *A.C. ex rel. J.C. v. Shelby Cnty. Bd. of Educ.*, 711 F.3d 687, 698 (6th Cir. 2013). The record indicates Torres took her first protected action in May 2016 when she requested a transfer as an accommodation from UH. Although Plaintiff argues Torres requested this accommodation as early as February, the record does not support the contention that Torres' request to transfer in February was a requested accommodation. It is clear from the record that Torres requested a transfer as soon as she heard her co-workers were discussing her absence. (R. 43, Torres Dep., PageID# 964-965). However, there is no evidence that at that time Torres expressed to her manager or the HR department that she had a disability. Consequently, there is no material dispute of fact as to whether UH knew in February that Torres was requesting an accommodation under the ADA. *See Hammon v. DHL Airways, Inc.*, 165 F.3d 441, 450 (6th Cir. 1999) ("An employer has notice of the employee's disability when the employee tells the employer that he is disabled." (citation omitted)); *see also Cady v. Remington Arms Co.*, 665 F. App'x 413, 418 (6th Cir. 2016) ("[T]he employee need not use the word 'disabled,' but the employer must know enough information about the employee's condition to conclude that he is disabled. Relevant information could include, among other things, a diagnosis, a treatment plan, apparent severe symptoms, and physician-imposed work restrictions.") (internal citation omitted).

In addition, Torres filed two complaints with the EEOC on December 5, 2016, and March 10, 2017, which constituted protected activity. (R. 44, PageID# 1079-82); *Cantrell v. Nissan N. Am. Inc.*, 145 F. App'x 99, 105 (6th Cir. 2005) ("There is no dispute that Cantrell engaged in a protected activity by filing a claim of discrimination with the EEOC"). However, as explained below, Plaintiff has not provided evidence that creates a material issue of fact on all four

10

elements of a retaliation claim for any of the retaliatory conduct alleged in the Complaint. The Court considers each of Plaintiff's allegations in turn.

1. **Plaintiff alleges Torres was retaliated against when UH refused to place her in an open position.**

During the time Torres was seeking a transfer, the only protected action she had taken was requesting a transfer as an ADA accommodation in May 2016. (*See generally* R. 1). In response to this request, UH declined to transfer Torres' but offered to keep her employment status active to allow her access to the internal job portal so she could apply for other jobs. (R. 50, PageID# 1374; R. 45, PageID# 1233).

Plaintiff alleges Torres was not selected for positions she applied to because she had made an accommodations request. (R. 1, PageID# 13 ¶75). To succeed on this claim, Plaintiff must show that the hiring managers knew Torres had engaged in a protected activity to prove the second element and that Torres was not hired because of her request for an accommodation to prove the fourth element. Plaintiff failed to establish the second element because there are no facts provided that establish the decision-makers, each respective hiring manager, knew of Torres' requested accommodation. Further undermining Plaintiff's claim on the fourth element, causal connection, Defendant has provided evidence that Torres was not selected for the open positions because she was either not a good fit or did not interview well. (R. 53, PageID# 1555–56). Specifically, Defendant has provided deposition testimony from a UH hiring manager that Torres was frequently rude, unprofessional, did not present well in interviews, was hard to get ahold of, and was late to an interview. (R. 41-1, Middleton Dep., PageID# 597-598, 601–602, 623, 646). Conversely, Plaintiff has failed to set forth any evidence to demonstrate a material dispute on this element, which would require showing facts to support the idea that Torres was not hired into an

open position earlier than December 2016 *because* she had requested an accommodation. Additionally, Torres did eventually receive two offers of employment within the UH system. (R. 43, Torres Dep., PageID# 912, 913). The lack of any evidence the hiring managers knew about the accommodations request, coupled with the documented reasons why Torres was not selected for open positions, shows there is no genuine issue of material fact that Torres' inability to obtain a new position was not an act of retaliation. Therefore, summary judgment is appropriate.

2. **Plaintiff alleges Torres was retaliated against when she was not given hours at UH SJMC.**

Plaintiff alleges that Torres was retaliated against by not being placed on the schedule at SJMC after she filed a charge with the EEOC in December 2016. (R. 1, PageID# 13 ¶75). However, Plaintiff has not set forth evidence capable of establishing the second element regarding knowledge or the fourth element regarding a causal connection between anyone at SJMC allegedly knowing about Torres' EEOC complaint and her alleged lack of work hours.[1] Therefore, there is no genuine issue of material fact regarding this accusation of retaliation.

Plaintiff has not supplied any facts to support a finding that anyone at SJMC knew about Torres' EEOC charge. The only support Plaintiff offered for this accusation is the timing of the charge and Torres' alleged lower number of work hours. (R. 50, PageID# 1309-10). The timing is minimally instructive because Torres filed the charge the same day that she accepted the

---

1 Defendant has pointed to evidence showing that there was another PRN physical therapist working at SJMC during the months in question, and that PRN worked only three hours while Torres worked nearly fifteen hours. (R. 45, PageID# 1252; *See* Decl. Pamela Lanter). Plaintiff has presented Torres' sworn testimony that she received no hours (R. 43, Torres Dep., PageID# 912; R. 50, PageID# 1299). The Court does not find it necessary to resolve this discrepancy because regardless of how many hours Torres received, Plaintiff has presented insufficient evidence to demonstrate a triable issue of fact for each fundamental element of a prima facie case for retaliation.

position at SJMC, making it impossible to compare how Torres was scheduled before the charge with how she was scheduled after. (R. 43, Torres Dep., PageID# 1004). However, Torres admits attending orientation on January 10 and 12, 2017, over a month after filing the charge. (R. 50, PageID# 1299). The record is devoid of any material factual support that anyone at UH SJMC was notified that she filed the EEOC charge and then thereafter decided to take retaliatory action. Though Plaintiff includes a copy of the EEOC notice of charge that was sent to the UH HR department on December 7, 2016, there is no evidentiary support for the idea that anyone at SJMC ever knew about the charge. (R. 50-3, Notice of Charge, PageID# 1318). Conversely, UH SJMC taking the time and resources to train Torres in January 2017 rebuts the notion that anyone at SJMC was aware of the EEOC charge and then planned not to schedule Torres for work shifts because of it. Further, Plaintiff's Complaint acknowledges that on February 6, 2017, Torres was told by her supervisor there was less need for PRN's than there had been in January. (R. 1, PageID# 9 ¶48).

Additionally, the nature of the PRN position makes it especially hard to determine whether the scheduling decisions were retaliatory.[2] Plaintiff did not provide any records of the availability Torres provided to SJMC, thereby significant undermining a claim that there is a genuine issue of material fact that she was fully available to work but her alleged lack of hours stemmed from retaliation for filing the EEOC charge.

Accordingly, Plaintiff cannot establish a prima facie case as they have not raised a genuine issue of material fact as to whether SJMC knew about Torres' EEOC charge and did not

---

2  A PRN physical therapist position is essentially an on-call role, as explained in Plaintiff's complaint and Torres' deposition, PRNs are called to fill in for other physical therapists as needed based on their own availability. (R. 1, PageID# 8; R 43, PageID# 916).

13

schedule her because she had filed the charge. Therefore, summary judgment on this accusation is appropriate.

3. **Plaintiff alleges Torres was retaliated against when her employment was terminated.**

Although Plaintiff alleges Torres was retaliated against when her employment was terminated, the record indicates Torres was not terminated from UH and remained an active employee so she could maintain access to internal job postings. (R. 1, PageID# 13 ¶75; R. 45, PageID# 1230, 1233; R. 50, PageID# 1374). Torres voluntarily left the other UH physical therapist positions she held after leaving the JCC and began working elsewhere, consequently, the Court construes Plaintiff as referring to the time when her position at the JCC was filled. (R. 43, Torres Dep., PageID# 913, 915). Requesting to be transferred as an ADA accommodation was the only protected activity Torres had taken when her position at the JCC was filled, and she had not yet filed a charge with the EEOC.

Under this claim, the Court presumes Plaintiff can satisfy the first three elements of a retaliation claim because: 1) Torres requested a transfer as an ADA accommodation in May 2016, 2) her supervisor at the JCC knew she had requested a transfer and 3) construing the facts in the light most favorable to Plaintiff as the non-movant, the Court will proceed as though Torres' position being filled satisfies the third element, showing adverse action. However, this claim ultimately fails on the fourth element because there are no facts in the record to support a causal connection.

There is no evidence in the record; and therefore, no material issue of fact to support the assertion that the position was filled *because* Torres requested a transfer. In fact, the record shows that after her request to be transferred was denied in June 2016, Torres was given the

14

opportunity to return to work at the JCC. (R. 50, PageID# 1295, 1372). Subsequently, Torres was given multiple warnings her position would be filled if she did not return. (R. 50, PageID# 1295, 1372, 1374). Plaintiff has not provided any information showing there is a genuine issue of material fact as to whether Torres was retaliated against for requesting to be transferred when she left her position at the JCC and was subsequently replaced. Rather, the record shows Torres was afforded multiple opportunities to return to work after her request to be transferred was denied, and her position was ultimately filled as a business necessity. (R. 50, PageID# 1374).

Because there is no genuine issue of material fact regarding whether Torres was retaliated against for any protected activity, summary judgment on Count 4 is appropriate.

## V. Conclusion

For these reasons, Plaintiff's Motion for Summary Judgment on Count 2 (R. 44) is denied, and Defendant University Hospitals Cleveland Medical Center's Motion for Summary Judgment on All Claims (R. 45) is GRANTED. Defendant's Motion to strike Novel Discovery issues (R. 55) is denied as moot.

IT IS SO ORDERED.

s/ *David A. Ruiz*
David A. Ruiz
United States District Judge

Date: March 29, 2024

15